Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Carrico, S.J.

PULTE HOME CORPORATION

OPINION BY
v. Record No. 021976      SENIOR JUSTICE HARRY L. CARRICO
April 17, 2003

PAREX, INC.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

On June 15, 2000, Tim L. Peckinpaugh and Pamela S. McKinney-Peckinpaugh (the Peckinpaughs), owners of a home in Wheatland Estates, Fairfax County, filed an amended motion for judgment against Pulte Home Corporation (Pulte), builder of the home, for damages allegedly caused by Pulte's use of a defective synthetic stucco product known as "Exterior Insulation and Finish System," or "EIFS."[1]  Parex, Inc. (Parex), the manufacturer of the EIFS, was also named as a defendant.  The Peckinaughs sought damages of $500,000 from Pulte and Parex to cover the cost of removing the synthetic stucco, installing new exterior siding, and repairing the damaged property.

Also on June 15, 2000, Pulte filed a cross-claim against Parex.  In separate counts, Pulte asserted claims for breach of express warranty, breach of implied warranty, indemnification,

_____

[1] The Peckinpaughs alleged in their amended motion for judgment that the EIFS was defectively designed and applied, causing undue amounts of moisture intrusion into the structure of their home, without means of escape, in turn causing wood to rot and decay.

and contribution.[2]  In each count, Pulte sought recovery from Parex for any damages that Pulte might be required to pay the Peckinpaughs, plus costs, interest, and attorney's fees.[3]

Pulte filed a demurrer to the Peckinpaughs' amended motion for judgment, and Parex filed demurrers to the Peckinpaughs' amended motion for judgment and to Pulte's cross-claim.  The demurrers were argued before the trial court on September 28, 2000.  With respect to Pulte's demurrer to the Peckinpaughs' amended motion for judgment, the trial court orally overruled the demurrer and entered a written order embodying that ruling.

With respect to Parex's demurrer to the Peckinpaughs' amended motion for judgment, the trial court sustained that demurrer.  With respect to Parex's demurrer to Pulte's cross-claim, the trial court orally sustained the demurrer as to each count, except the count for breach of implied warranty, which the court took under advisement.  Later in the day on September 28, 2000, the court entered an order sustaining the demurrer to the count for implied warranty.

---

[2] Originally, the cross-claim also contained a count for breach of contract, but Pulte later abandoned that count.

[3] Pulte makes the assertion on brief that "[o]ne item of damage sought by [Pulte] is the lost value of the stucco goods received from Parex . . . (i.e. the lost value of a defective product). App. 13."  However, this claim cannot be found on Page 13 of the appendix; that is a page in the Peckinpaughs' amended motion for judgment related to an entirely different matter.  But the claim cannot be found in the cross-claim either.

On October 18, 2000, Pulte sought by motion to have the trial court reconsider its action on the demurrers but was unsuccessful in the effort. Pulte then settled the Peckinpaughs' claim. It does not appear from the record, but Pulte states on brief and Parex does not deny, that the Peckinpaughs assigned to Pulte their claim against Parex. Pulte stated during oral argument that it is not asserting any rights as an assignee in this appeal.[4].

An order sustaining Parex's demurrer to the counts in Pulte's cross-claim for breach of express warranty, indemnification, and contribution was entered on March 2, 2001. The proceeding was terminated by a final order entered on May 20, 2002. Thereafter, we awarded Pulte this appeal.

Pulte has filed four assignments of error, attacking in order the sustaining of the demurrer to the cross-claim counts for breach of express warranty, breach of implied warranty, indemnification, and contribution. The sole question for decision is whether the trial court erred in sustaining Parex's demurrer to Pulte's cross-claim.

## I. Breach of Express Warranty

---

[4] The owners of fourteen other homes built by Pulte filed similar separate actions against Pulte and Parex for damages caused by the use of EIFS. Those cases are not before us, but Pulte states in a footnote to its brief that the cases "followed a similar path, with the plaintiffs settling their claims with [Pulte] and assigning their remaining claims against [Parex] to [Pulte]," and that Pulte and Parex agreed that Pulte "would non-

Pulte argues that, in its cross-claim, it "pled its breach of express warranty based on two separate theories."  First, it alleged in the cross-claim that, to the extent it approved the use of EIFS on the Peckinpaughs' house, such "approval was based upon the express oral or written warranties of Parex by way of affirmations of fact, promises, descriptions, and/or use of samples and/or models regarding the appearance, durability, and/or water-resistance of [EIFS]."  Second, Pulte alleged in its cross-claim that it was entitled to recover as a direct and/or intended beneficiary under written limited warranties provided by Parex to the subcontractors and supplier.

Pulte maintains that, in sustaining Parex's demurrer, the trial court engaged in "raw fact finding," erroneously "determining that there was 'no express warranty'" and that "no [written limited] warranties existed."  For this error, Pulte concludes, the judgment of the trial court should be reversed.

We disagree with Pulte.  Before demurring to Pulte's cross-claim, Parex filed a motion referencing the allegations in the cross-claim with respect to oral and written express warranties and craving oyer.  The motion sought "any alleged contract or agreement and any alleged express warranty forming the basis" of the count for breach of express warranty in Pulte's cross-claim. Pulte responded that it was "not yet in possession of any

---

suit its assigned claims against Parex in the other cases pending the outcome of this appeal . . . ."

4

written contract entered into by Parex, nor any written warranty issued by Parex" but would soon serve requests for documents upon Parex, the subcontractors, and the supplier.

Hence, Pulte was left with the naked allegation in its cross-claim that its approval of the use of the EIFS was based upon the express oral or written warranties of Parex "by way of affirmations of fact, promises, descriptions, and/or use of samples and/or models regarding the appearance, durability, and/or water-resistance of [EIFS]." This allegation merely parroted the language of Code § 8.2-313, which sets forth several <u>legal</u> bases for the creation of express warranties, and amounted to no more than a legal conclusion.[5] The cross-claim did not identify any "affirmations of fact, promises, descriptions, and/or use of samples and/or models" purportedly made by Parex. The allegations of the cross-claim were insufficient, therefore, to state a claim for breach of express warranty. Rule 1:4(d); <u>see</u> <u>also</u> <u>Moore v. Jefferson Hospital, Inc.</u>, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967) (motion for

---

[5] Code § 8.2-313 provides in pertinent part as follows:

(1) Express warranties by the seller are created as follows:
    (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . .
    (b) Any description of the goods which is made part of the basis of the bargain . . . .
    (c) Any sample or model which is made part of the basis of the bargain . . . .

5

judgment must set forth the essential facts of a claim, not conclusions of law).

## II. Breach of Implied Warranty[6]

Whether the trial court erred in sustaining Parex's demurrer to Pulte's claim for breach of implied warranty turns on whether the damages for the alleged breach are direct or consequential.  Parex contends the damages are consequential and not recoverable in the absence of privity between Pulte and Parex.  Pulte does not claim privity exists but contends the damages at issue are direct and recoverable despite the lack of privity.[7]

In its order of September 28, 2000, the trial court stated that it was sustaining Parex's demurrer to Pulte's count for breach of implied warranty "based upon the ruling in Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc., et al., 254 Va. 240, 491 S.E.2d 731 (1997)."  There, we responded to a question certified to us by the United States Court of Appeals for the Fourth Circuit.  The question read as follows:

> Is privity required to recover economic loss under Va. Code § 8.2-715(2) due to the breach of the implied warranty of merchantability, notwithstanding the language of Va. Code § 8.2-318?

254 Va. at 244, 491 S.E.2d at 733.

---

[6] Pulte states it is the implied warranty of merchantability that is at issue in this case.

[7] Pulte did not purchase the EIFS from Parex.  Rather, Pulte engaged a subcontractor to apply the EIFS, the subcontractor

We said that to "answer this question, we must first determine whether § 8.2-715(2) requires the existence of a contract for the recovery of economic loss damages in breach of warranty cases." 254 Va. at 244, 491 S.E.2d at 733. Section 8.2-715(2) provides as follows:

> Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise[.]

We said that because the Court of Appeals had directed its inquiry specifically to this section, we would assume the court had concluded that the economic loss damages claimed by Beard were consequential damages rather than direct damages. 254 Va. at 244, 491 S.E.2d at 733. We also said that because § 8.2-715(2)(a) contained the language, " 'at the time of contracting,' " the statute "requires a contract between the parties for the recovery of consequential economic loss damages incurred as a result of a breach of warranty by the seller." 254 Va. at 245, 491 S.E.2d at 733-34.

We then turned to the question whether the provisions of § 8.2-318, also referenced in the certified question, supersede the contract requirement of § 8.2-715(2)(a). Section 8.2-318 provides in pertinent part as follows:

obtained the EIFS through a supplier, and the supplier purchased the EIFS from Parex.

7

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods[.]

We stated that because § 8.2-715(2)(a) addresses in a specific way the subject of the ability to raise the common law requirement of privity as a defense and § 8.2-318 addresses the subject in a general way, § 8.2-715(2)(a) prevails. We stated further that "because § 8.2-715(2)(a) requires a contract between the parties for recovery of consequential economic loss damages in a claim for breach of the implied warranty of merchantability, we answer the certified question in the affirmative," 254 Va. at 246, 491 S.E.2d at 734, meaning that privity is required to recover economic loss under Code § 8.2-715(2) due to the breach of the implied warranty of merchantability.

Here, Pulte argues that the trial court misapplied this Court's opinion in Beard. That case dealt only with consequential damages, not direct damages, Pulte maintains, yet the trial court cited Beard in ruling that privity is required not only to assert claims for consequential damages but also to assert claims for direct or non-consequential damages.

Pulte cites a passage from the record to show that the trial court made such a ruling. During oral argument on Parex's

8

demurrer on September 28, 2000, the trial judge stated he was taking under advisement the question whether the damages in question were direct or consequential and that he would "have an answer on that this afternoon." One of the counsel then stated that "the Beard case doesn't address whether the anti-privity [rule] does apply to direct damages" and "[t]hat will have to be part of your ruling." The judge replied: "You are right. Thank you." This indicates, Pulte says, that when the trial judge entered the order that afternoon sustaining Parex's demurrer based upon Beard, such entry meant that the judge had held the requirement of privity applicable to both consequential and direct damages.

We do not read the record this way. Since the trial judge cited Beard, it will be presumed that he had read our opinion, understood that the case involved only consequential damages, and applied our ruling correctly. Without some indication the trial judge acted otherwise, we can only conclude that his reference to Beard meant he found the damages in this case, like those in Beard, to be consequential, not direct, and, as a result, there could be no recovery for Pulte without privity between it and Parex.

Pulte maintains that if the trial court did determine that the damages at issue were consequential, its determination was inappropriate because made at the demurrer stage and "this was the wrong point in time." Pulte says that in its cross-claim it

9

specifically requested "direct damages under Section 8.2-714(2) of the Virginia Code, together with consequential damages to the extent available by law."  This was sufficient, Pulte concludes, to save its claim for direct damages from dismissal on demurrer, and it was "entitled to have [its] day in court on that issue."[8]

We disagree with Pulte.  Whether damages are direct or consequential is a matter of law for decision by the court. R.K. Chevrolet, Inc. v. Hayden, 253 Va. 50, 56, 480 S.E.2d 477, 481 (1997).  The trial court had before it Pulte's fourteen page cross-claim with each count set forth fully, giving the court all the information it needed to make an informed judgment on Parex's demurrer.  Furthermore, we cannot find from the appendix where Pulte ever objected to the court's acting on the demurrer on the ground it was "the wrong point in time," Rule 5:25, and none of Pulte's assignments of error mentions the point, Rule 5:17(c).

With respect to Pulte's argument that its claim for direct damages should have survived demurrer merely because it requested such damages in its cross-claim, the trial court during argument appropriately observed that just saying damages are direct does not make them direct.  The allegations of the

---

[8] Code § 8.2-714(2) provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

10

cross-claim leading up to the request disclose the true nature of Pulte's damages as consequential.  These allegations read as follows:

> In the event [Pulte] is found liable to [the Peckinpaughs] or otherwise incurs any loss whatsoever as a result of [the Peckinpaughs'] allegations, [Pulte] is entitled to recover from Parex for the breach of said implied warranties insofar as Parex's breach would be the factual and proximate cause of all or part of [Pulte's] loss.

> WHEREFORE, [Pulte] demands payment from Parex for any damages that [Pulte] may be required to pay [the Peckinpaughs] and for any other loss that [Pulte] consequently may incur . . . .

In other words, Pulte would suffer damages from Parex's breach of warranty only upon the happening of an intermediate event, _i.e._, Pulte being found liable to the Peckinpaughs for the damages they suffered.  Hence, by their very nature, Pulte's damages would be consequential rather than direct.

"The term 'consequential damages' is thus defined in Black's Law Dictionary:  'Such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act.' " Washington & Old Dominion Ry. Co. v. Westinghouse Elec. & Mfg. Co., 120 Va. 620, 634, 91 S.E. 646, 647 (1917) (quoting Black's Law Dictionary 249 (2nd ed. 1910)).

Pulte's damages fit into this definition like a hand in a glove.  They did not flow directly and immediately from the act of Parex's breach of warranty but from a consequence of the

11

Peckinpaughs' recovery of damages from Pulte. Indeed, Pulte acknowledges that it is entitled to recover only on some "sort of a pass through." Since such a detour is required to get from Parex's breach of warranty to Pulte's damages, those damages cannot be considered as direct but consequential, with a showing of privity necessary for their recovery. There has not been such a showing in this case.

### III. Indemnification

Pulte states that its claim for indemnification "is based on the theory that any liability incurred by [Pulte] 'would be derivative, constructive, passive and/or secondary, while the acts and omissions of [Parex] would be the active, direct and primary cause of Plaintiffs' damages.' " Pulte says it is entitled to implied or equitable indemnification because it is called upon to discharge the obligation of Parex, the party primarily liable for the Peckinpaughs' damages. Yet, Pulte complains, the trial court denied its claim for implied or equitable indemnity because the court erroneously relied upon Virginia Elec. & Power Co. v. Wilson, 221 Va. 979, 277 S.E.2d 149 (1981), which states that "[t]he distinguishing feature of indemnity is that it must necessarily grow out of a contractual relationship." Id. at 981-82, 277 S.E.2d at 150.

Pulte maintains that the statement in Wilson is "pure dicta," that the case involved contribution, not indemnification. However, the statement is not dicta; the Court

12

stated that it had granted the appeal "to determine if Vepco . . . has a right of contribution or indemnity against Wilson," id. at 980, 277 S.E.2d at 150 (emphasis added), the Court noted that the third-party motion for judgment alleged "liability for contribution or indemnity," id., 277 S.E.2d at 149 (emphasis added), and the Court held that "no right of contribution or indemnity could exist in favor of Vepco," id. at 982, 277 S.E.2d at 150 (emphasis added).

However, Pulte argues, Wilson is not controlling because this Court held in Carr v. The Home Ins. Co., 250 Va. 427, 463 S.E.2d 457 (1995), that equitable indemnification is viable under Virginia law. We did say in Carr that we agreed that "[e]quitable indemnification arises when a party[,] without personal fault, is nevertheless legally liable for damages caused by the negligence of another." Id. at 429, 463 S.E.2d at 458. But we also said that "[a] prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage." Id.

So, whether Wilson or Carr is applied, Pulte loses either way. It cannot win under Wilson because the claim for indemnification did not arise out of a contractual relationship, and it cannot win under Carr because there has been no determination that any act or omission of Parex caused the damage to the Peckinpaughs' house.

IV. Contribution

13

Pulte initially said on brief that its claim to contribution was based upon Code § 8.01-34, which provides that "[c]ontribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude." Countering, Parex stated that it cannot be deemed a joint tortfeasor with Pulte and, therefore, Code § 8.01-34 is inapplicable.

Apparently conceding the point, Pulte now says that, "even if Parex were not a joint tortfeasor," this Court recognized in Thweatt's Adm'r v. Jones, Adm'r, 22 Va. (1 Rand.) 328 (1823), "that the common law right to contribution is not limited just to joint tortfeasors, but rather that contribution runs to all parties who 'are equally bound to bear a burthen.' 22 Va. at 334." Responding, Parex maintains that because the trial court sustained its demurrer to "each and every claim" in the Peckinpaughs' amended motion for judgment, there is no joint liability for those claims and contribution will not lie.

We agree with Parex. In Virginia Elec. & Power Co. v. Wilson, supra, we emphasized that " 'before contribution may be had it is essential that a cause of action by the person injured lie against the alleged wrongdoer from whom contribution is sought.' " 221 Va. at 981, 277 S.E.2d at 150 (quoting Bartlett v. Roberts Recapping, Inc., 207 Va. 789, 792-93, 153 S.E.2d 193, 196 (1967)). And in Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp., 234 Va. 54, 360 S.E.2d 342 (1987), we made it clear that

14

while contribution will lie if the injured party's cause of action is not presently enforceable but was enforceable at some time in the past, contribution is unavailable if the injured party "never had an enforceable cause of action against the target of the contribution claim." Id. at 58, 360 S.E.2d at 344 (emphasis added).

The trial court's action in sustaining Parex's demurrer to the Peckinpaughs' amended motion for judgment was tantamount to a holding that the Peckinpaughs never had an enforceable cause of action against Parex.[9] Hence, there is no joint liability for the Peckinpaughs' claims as between Pulte and Parex, and Pulte's claim for contribution against Parex does not lie.

## V. CONCLUSION

Finding no error in the rulings of the trial court, we will affirm its judgment.

Affirmed.

---

[9] In a last-ditch effort to demonstrate that the Peckinpaughs have an enforceable cause of action against Parex, Pulte says that the Peckinpaughs "alleged facts that supported an unasserted claim against Parex for false advertising, in violation of Va. Code § 18.2-216," and that the same allegations in the fourteen companion cases withstood demurrers by Parex. However, Pulte does not tell us what facts support the unasserted claim, where they can be found in the record, or how we can even consider, let alone find determinative, what happened in cases not before us.