Present:  All the Justices

BENJAMIN L. HUBBARD, SR.

                                        OPINION BY
v.  Record No. 050544        JUSTICE LAWRENCE L. KOONTZ, JR.
                                      January 13, 2006
DRESSER, INC.


              FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
                    Humes J. Franklin, Jr., Judge


     In this appeal, we consider whether the trial court

properly sustained a demurrer to an amended motion for judgment

alleging breaches of express and implied warranties in

connection with the sale of certain petroleum dispensing

equipment.

     Our consideration of the issue presented is guided by well-

established principles of appellate review.  "A demurrer tests

the legal sufficiency of facts alleged in pleadings, not the

strength of proof.  We accept as true all facts properly pleaded

in the bill of complaint and all reasonable and fair inferences

that may be drawn from those facts."  Glazebrook v. Board of

Supervisors of Spotsylvania County, 266 Va. 550, 554, 587 S.E.2d

589, 591 (2003) (citations omitted).  Moreover, "when a circuit

court sustains a demurrer to an amended motion for judgment

which does not incorporate or refer to any of the allegations

that were set forth in a prior motion for judgment, we will

consider only the allegations contained in the amended pleading

to which the demurrer was sustained." Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 102, 540 S.E.2d 134, 136 (2001); see also Doe v. Zwelling, 270 Va. 594, 596, 620 S.E.2d 750, 751 (2005); Fuste v. Riverside Healthcare Ass'n., 265 Va. 127, 129-30, 575 S.E.2d 858, 860 (2003).

BACKGROUND

On March 1, 2004, Benjamin L. Hubbard, Sr., who operates a retail gasoline service station in Covington, Virginia under the fictitious name of Hubbard's Service, filed an amended motion for judgment in the Circuit Court of Alleghany County against Jones & Frank Corporation and Dresser, Inc. In this pleading Hubbard alleged that Jones & Frank sells, installs and services petroleum dispensing equipment, and that Dresser manufactures and sells petroleum dispensing equipment for use by customers such as Hubbard, "and does so through representatives, including Jones & Frank." Hubbard alleged that in 2001, he contracted with Jones & Frank for the installation of two diesel fuel pumps at Hubbard's Service to replace two fuel pumps that had been destroyed in an accident. Hubbard alleged that prior to entering into the contract, Jones & Frank was "informed . . . that Hubbard wished to replace the destroyed fuel pumps with exactly what had been destroyed, namely two independently operated diesel fuel dispensers." Hubbard further alleged that "Jones & Frank represented to Hubbard that the fuel dispensing

2

equipment it proposed to sell him was identical to the pumps that had been destroyed." The cost for the purchase and installation of the pumps under the contract was $49,469.00.

The pumps installed by Jones & Frank included a Wayne Model HS1/V387P1 unit manufactured by Dresser, which is "referred to as a 'Master to Satellite Systems'" pump (the Dresser pump). Hubbard alleged that "the Dresser diesel fuel dispensing equipment . . . consisted of experimental units . . . made up of two diesel pumps controlled by one unit, rather than two independently operated units, as promised." Hubbard further alleged that "[w]ithin days" following completion of the installation of the Dresser pump in October 2001, "the equipment manufactured by Dresser and sold by Jones & Frank began to malfunction, including being loud and failing to register accurately the amount of fuel being dispensed."

Hubbard alleged that "[k]nowing the equipment it sold Hubbard never operated properly, Jones & Frank orally extended its contractual installation warranty against defects in workmanship for [one] year." Because the fuel pump "never operated properly," Hubbard "revoked his acceptance of the equipment" on December 17, 2002.

Relevant to the issues raised in this appeal, Hubbard made claims against Dresser for breach of an express warranty and

3

breach of an implied warranty of merchantability.[1]  With respect

to the express warranty claim, Hubbard alleged that "[w]hen

Dresser supplied to Jones & Frank and Jones & Frank sold to

Hubbard the diesel fuel dispensing equipment . . . they

expressly warranted that the equipment would be free of defects

in design, workmanship and material" and that the equipment

delivered had not been free of such defects.  Similarly, Hubbard

alleged Dresser was subject to an implied warranty of

merchantability to supply equipment free from defects in design,

workmanship and material.  Hubbard sought damages of $250,000

from Dresser for these alleged warranty breaches.

Dresser filed a demurrer to Hubbard's amended motion for

judgment.  Dresser contended therein that Hubbard's claim for

breach of an express warranty was "deficient as it pertains to

Defendant Dresser because it states conclusions of law only

without pleading any facts to support the legal conclusion."

Dresser further contended that "express warranties do not run

with particular goods and are restricted to the parties subject

to the agreement such warranty was designed to effectuate" and

_____

[1] The amended motion for judgment also included claims for
breach of contract and fraud against Jones & Frank, and "breach
of warranty for the fitness of purpose" against Jones & Frank
and Dresser.  The trial court's sustaining of a demurrer to
these claims is not at issue here, and Jones & Frank is not a
party to this appeal.

4

that Hubbard "does not have nor claims to have privity with Defendant Dresser."

With respect to the claim for breach of the implied warranty of merchantability, Dresser contended that the amended motion for judgment failed to make clear whether the alleged breach had been caused by Dresser or by Jones & Frank. Dresser further contended that "the legal standard for alleging that a manufacturer is in breach of the implied warranty of merchantability is that the goods were somehow defective when they left the manufacturer's possession." Dresser contended that Hubbard had failed to make such an allegation and, thus, the pleading was factually insufficient to state a claim for breach of an implied warranty.

Hubbard filed a memorandum brief opposing Dresser's demurrer. Hubbard contended that he did not need to allege privity with Dresser because he sought to recover for direct, not consequential, economic losses for which privity was not required. Hubbard further contended that his allegation that "the fuel pumps Dresser manufactured malfunctioned soon after installation was complete," was sufficient to allege a breach of the express and implied warranties.

Following oral argument by the parties, the trial court issued an opinion letter dated November 15, 2004 stating its rationale for sustaining Dresser's demurrer. With respect to

5

the claim for breach of an express warranty, the trial court concluded that Hubbard had failed to allege "why the fuel pump did not work, specifically that there were defects in the fuel pump, or that Dresser expressly warranted that the equipment would be free of defects in design, workmanship and material." In the absence of a specific allegation of the nature of the defect, the trial court ruled that "Hubbard ha[d] not stated a claim upon which relief can be granted."  Similarly, the trial court ruled that the absence of an express allegation of "any specific facts on why the fuel pump did not work properly," barred Hubbard's claim of a breach of the implied warranty of merchantability.[2]

In a final order dated December 15, 2004, the trial court sustained Dresser's demurrer and dismissed Hubbard's amended motion for judgment with prejudice, adopting by reference the reasons stated in its November 15, 2004 opinion letter.  Hubbard excepted to this judgment and expressly noted his objection in endorsing the final order.

---

[2] The trial court did not expressly address Dresser's assertion that Hubbard was required to allege privity with Dresser or Hubbard's response that privity was not required to be alleged because he sought to recover only direct damages. Dresser did not assign cross-error to the trial court's failure to rule on these points and in briefing this appeal did not raise the issues of the failure to plead privity or whether the damages Hubbard seeks are direct or consequential.  Accordingly, we express no opinion on those issues.

DISCUSSION

"Because appellate review of the sustaining of a demurrer involves a matter of law, we review the trial court's judgment de novo."  Glazebrook, 266 Va. at 554, 587 S.E.2d at 591.  In doing so, we are required to address the same issue that the trial court addressed, namely whether the amended motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. See Moore v. Jefferson Hospital, Inc., 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967).  To survive a challenge by demurrer, a pleading must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.  In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action."  Id. (internal quotation marks and citations omitted).

Hubbard contends that the trial court erred in sustaining the demurrer with respect to his claim for breach of an express warranty because the amended motion for judgment stated that Dresser "expressly warranted" that the diesel fuel dispensing equipment it supplied to Jones & Frank would be "free of defects in design, workmanship and material," and that the fuel pump malfunctioned "[w]ithin days" and "never operated properly." Dresser responds that Hubbard's amended motion for judgment

7

failed to state a cause of action for breach of an express warranty because it alleged no facts to support the existence of an express warranty and "makes only conclusory allegations that the pump was somehow defective in design or manufacture."

Dresser relies principally upon Pulte Home Corp. v. Parex, Inc., 265 Va. 518, 523-24, 579 S.E.2d 188, 190 (2003), to support its contention that the allegations in Hubbard's amended motion for judgment amounted to no more than a legal conclusion and lacked sufficient facts to state a claim for breach of an express warranty. This reliance is misplaced. In Pulte Home, the claim for breach of an express warranty was premised upon an assertion that an express warranty arose "by way of affirmations of fact, promises, descriptions, and/or use of samples and or models regarding the appearance, durability, and/or water-resistance" of a certain synthetic stucco product. Id. at 522, 579 S.E.2d at 190. The trial court sustained a demurrer to this claim after the party asserting it was unable to produce any contract or agreement or any express warranty forming the basis of the express warranty claim. In this context, we held that the pleading contained an "allegation [that] merely parroted the language of Code § 8.2-313, which sets forth several legal bases for the creation of express warranties, and amounted to no more than a legal conclusion." Id. at 523, 579 S.E.2d at 190. Accordingly, we further held that the pleading

8

was insufficient to state a claim for breach of an express warranty. Id.

Here, unlike the pleading in Pulte Home, Hubbard's pleading alleged an express warranty by Dresser, rather than merely stating the legal bases upon which such a warranty might have been created. Hubbard also pled a breach of that express warranty because the failure of the diesel fuel dispensing system to register accurately the amount of fuel being dispensed can reasonably be inferred to have resulted from some flaw in the design, workmanship or material in the Dresser pump that was the integral part of that system. The ultimate strength of Hubbard's proof of that claim is not at issue in this appeal.

The allegations of Hubbard's amended motion for judgment, however, are sufficient to survive a challenge by demurrer. Accordingly, we hold that the trial court erred in sustaining Dresser's demurrer to Hubbard's claim of breach of an express warranty.

With respect to Hubbard's claim that Dresser breached the implied warranty of merchantability, Dresser contends that Hubbard was required to plead the nature of the defect alleged to have caused the breach, as well as establish the applicable standard of merchantability in the industry. Dresser contends that Hubbard did not allege, in his amended motion for judgment,

sufficient facts to identify either the nature of the defect or the industry standard that was breached.  We disagree.

Dresser is correct that "[i]n order to prove that a product is not merchantable, the complaining party must first establish the standard of merchantability in the trade."  Bayliner Marine Corp. v. Crow, 257 Va. 121, 128, 509 S.E.2d 499, 503 (1999).  However, we note that in Bayliner Marine we were addressing the evidentiary burden of the complaining party to successfully maintain an action for breach of implied warranty at trial.  Id. at 125-26, 509 S.E.2d at 501-02.  We did not hold in that case that it was necessary for the complaining party to plead with specificity the trade or industry standard for merchantability, and we decline Dresser's implicit invitation that we do so here.

Code § 8.2-314 provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  In part, the statute further defines "merchantable goods" as being of a quality that would "pass without objection in the trade under the contract description" or which "are fit for the ordinary purposes for which such goods are used."

In the amended motion for judgment, Hubbard alleged that Dresser was a manufacturer of "petroleum dispensing equipment for use by customers such as Hubbard, and does so through representatives, including Jones & Frank."  Hubbard alleged that

10

from its installation, the pump "fail[ed] to register accurately the amount of fuel being dispensed" and that this failure was due to a defect in the design, workmanship or material of the pump supplied by Dresser.

Reason and common sense dictate that a pump manufactured for the purpose of dispensing petroleum products in a retail setting would of necessity be required to accurately register the amount of fuel being dispensed. And, it further follows that a pump manufactured for that purpose that failed to properly register the amount of fuel being dispensed would not "pass without objection in the trade" as it is not "fit for the ordinary purposes for which such goods are used." Thus, while Hubbard will have the burden of proving these allegations at trial and that the alleged failure of the pump to perform was due to a defect caused by Dresser, the allegations themselves are clearly adequate to state a claim for breach of the implied warranty of merchantability provided by Code § 8.2-314. Accordingly, we hold that the trial court erred in sustaining Dresser's demurrer to Hubbard's claim for breach of the implied warranty of merchantability.

CONCLUSION

For these reasons, we will reverse the judgment of the trial court sustaining Dresser's demurrer to the claims of breach of an express warranty and breach of the implied warranty

11

of merchantability, and the case will be remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.