418

# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Rivanna Solid Waste Authority

    v.

Peter Van der Linde,
Van der Linde Housing, Inc.,
d/b/a the Van der Linde Homes
and Container Rentals,
and Container Rentals, L.L.C.

    v.

BFI Waste Services, L.L.C.,
and BFI Transfer Systems
of Virginia, L.L.C.

July 21, 2009

Case No. 07-376

BY JUDGE EDWARD L. HOGSHIRE

    Third-Party Defendants BFI Waste Services, L.L.C., and BFI Transfer Systems of Virginia, L.L.C. (collectively "BFI") have filed a demurrer to the Third-Party Complaint of Peter Van der Linde *et al.* The parties submitted legal memoranda and, on May 14, 2009, the Court conducted a hearing on the issues presented. Subsequently, the parties submitted Proposed Findings of Fact and Conclusions of Law. After carefully considering counsels' arguments and the relevant legal authorities, the Court finds as follows.

*Findings of Fact*

On February 13, 2009, Third-Party Defendants BFI filed their demurrer challenging the Third-Party Complaint of Defendants and Third-Party Plaintiffs Peter Van der Linde, Van der Linde Housing, Inc., and Container Rentals, L.L.C. (collectively "Container Rentals").

The dispute between Container Rentals and BFI is an outgrowth of the pending lawsuit between the Plaintiff in this action, Rivanna Solid Waste Authority ("the Authority"), and Container Rentals. The Court will refer to the basic allegations set forth in the Authority's First Amended Complaint ("Amended Complaint") to provide context for its discussion of the Third-Party Complaint.

The Third-Party Complaint contains three separate counts. In the first count, Container Rentals asserts a claim for equitable indemnification against BFI; in the second, a claim for third-party beneficiary breach of contract; and in the third, a claim for money had and received. All of the claims in the Third-Party Complaint are derivative in nature, in that they seek to hold BFI responsible for some or all liability that Container Rentals might suffer at a trial of the Authority's Amended Complaint but do not seek redress against BFI independent of the underlying Amended Complaint.

According to the Amended Complaint, the Authority is a quasi-governmental entity formed pursuant to the Virginia Water and Waste Authorities Act to handle solid waste disposal and recycling activities in the City of Charlottesville and Albemarle County. Amended Complaint at ¶ 4.

Container Rentals is a local company in the business of providing commercial and residential container rental services to customers in the Central Virginia area. Third-Party Complaint at ¶ 3. Container Rentals is owned and operated by Defendant Peter Van der Linde. Third-Party Complaint at ¶ 1.

BFI is in the business of waste storage, collection, and management within the Commonwealth of Virginia. Third-Party Complaint at ¶ 4. BFI is a wholly-owned subsidiary of the multi-national waste management company Allied Waste Industries, Inc., which has recently merged with Republic Services, Inc. *Id.* BFI is a successor in interest to BFI Waste Systems of North America, Inc., which was acquired by Allied Waste Industries, Inc., by stock merger in 1999. *Id.* BFI owns and operates a transfer station in the County of Fluvanna, Virginia ("Transfer Station"). Third-Party Complaint at ¶ 7.

In December of 1997, the Authority entered into an Agreement for Municipal Solid Waste Disposal ("Agreement") with BFI's predecessor entity, BFI Waste Systems of North America, Inc. Amended Complaint at ¶ 23; Third-Party Complaint at ¶ 6. The purpose of the Agreement was to govern the disposal of municipal solid waste ("MSW") originating in Albemarle County and the City of Charlottesville ("Rivanna Area"). *Id.*

Container Rentals alleges under the Agreement, that BFI agreed to accept all Rivanna Area MSW delivered to the Transfer Station by the Authority or by third-party haulers like Container Rentals. Third-Party Complaint at ¶ 6. In exchange, the Authority agreed to pay BFI Waste Services a tipping fee called a "base disposal fee" for each ton of Rivanna Waste deposited at the Transfer Station by the Authority or a third-party. Third-Party Complaint at ¶ 8. The Agreement obligated the Authority to act as collector for all tipping fees charged to certain third-party haulers of Rivanna Area waste. Third-Party Complaint at ¶ 9. Such tipping fees include the base disposal fee charged by BFI and a "service contribution fee" that the Agreement entitled the Authority to charge third-party haulers for the privilege of depositing Rivanna Area waste at the Transfer Station. *Id.*

The Authority and Container Rentals allege that the Agreement obligated BFI to ask all third-party haulers about the geographical origin of their waste ("the Origin Question") before admitting such waste to the Transfer Station for disposal purposes. Amended Complaint at ¶ 28; Third-Party Complaint at ¶ 11. Container Rentals alleges that BFI's obligation to ask the Origin Question is implicit in the billing arrangements set forth in the Agreement. Third-Party Complaint at ¶ 11. The Authority does not specify where the obligation to ask the Origin Question arises.

In filing its seven-count Amended Complaint, the Authority seeks to collect from Container Rentals at least $1 million in unpaid service contribution fees for Rivanna Area waste that it alleges Container Rentals deposited at the Transfer Station during the period between September 1, 2005, and the present ("the Relevant Period"). Amended Complaint at ¶¶ 1-3, 54-90. The Authority also seeks punitive damages for allegedly malicious misconduct. Amended Complaint at ¶¶ 54-90. The Authority pleads two principal theories of recovery. In Counts I through IV, the Authority alleges that Container Rentals, acting on its own and conspiring with third-parties, defrauded the Authority of service contribution fees by intentionally or negligently misrepresenting the geographical origin of trash deposited at the Transfer Station when asked the Origin Question by BFI. Amended Complaint at ¶¶ 54-77. In the alternative, in Counts V through VII, the Authority alleges that, even if Container Rentals is not liable for fraud or conspiracy, it should

pay the Authority service contribution fees with respect to all loads of Rivanna Area MSW deposited at the Transfer Station for which no fee was previously charged. Amended Complaint at ¶¶ 78-90.

According to the Third-Party Complaint, Container Rentals' principal defense to the Authority's claims of fraud and conspiracy is that BFI's employees at the Transfer Station failed to ask the Origin Question of Container Rentals' drivers during the Relevant Period, thus precluding the possibility of intentional or negligent misrepresentation. Third-Party Complaint at ¶ 14, 20.

Container Rentals alleges that BFI's failure to ask Container Rentals the Origin Question amounts to a material breach of the Agreement and that, as a consequence of such breach, the information that BFI provided to the Authority about Rivanna Area waste deposited by Container Rentals during the Relevant Period is corrupted. Third-Party Complaint at ¶ 15. Container Rentals alleges that, if the Authority has suffered a loss in revenue from unpaid service contribution fees during the Relevant Period, that loss is directly attributable to BFI's failure to provide RSWA with accurate and comprehensive information about Rivanna Area MSW deposited by third-party haulers, including Container Rentals, at the BFI Transfer Station. Third-Party Complaint at ¶ 21. Consequently, Container Rentals demands that BFI bear responsibility for any damages that the Authority may have suffered.

*Conclusions of Law*

For the purposes of demurrer, the facts as stated in Container Rentals' Third-Party Complaint shall be taken as true and correct. *Flippo v. F & L Land Co.*, 241 Va. 15, 17 (1991). The facts admitted are those expressly alleged, those that fairly can be viewed as impliedly alleged, and those that may fairly and justly be inferred from the facts alleged. *Rosillo v. Winters*, 235 Va. 268, 270 (1988) (quoting *Ames v. American National Bank*, 163 Va. 1, 37 (1934)). As long as a claim contains sufficient allegations of material fact to inform the respondent of its true nature and character, it will withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). A demurrer, however, will be sustained when the pleading does not state a cause of action or fails to state facts upon which the relief demanded can be granted. Va. Code § 8.01-273.

In its demurrer, BFI challenges all three counts alleged by Container Rentals in the Third-Party Complaint. The Court will address each count in the order in which it was pleaded.

A. *Equitable Indemnification*

In Count I of the Third-Party Complaint, Container Rentals asserts a claim for equitable indemnification against BFI. The Virginia Supreme Court has stated that a claim for equitable indemnification "arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another. Equitable principles allow the innocent party to recover from the negligent actor for the amounts paid to discharge the liability." *Carr v. Home Ins. Co.*, 250 Va. 427, 429 (1995). Importantly, "a prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage." *Id.*

Authorities, however, have not interpreted this requirement of an initial determination of negligence in precisely the same manner. The United States District Court for the Eastern District of Virginia has stated that "an equitable indemnification claim 'is assertable . . . as long as there is an allegation of negligence on the part of another alleged joint tortfeasor'." *Williams v. United States*, 469 F. Supp. 2d 339, 342 (2007) (quoting *CSX Transp., Inc. v. Titan Am. L.L.C.*, 72 Va. Cir. 593, 595 (2004)). The Circuit Court for the City of Norfolk has similarly asserted that an indemnitee may rely on their negligence claims against the defendant indemnitor as the underlying basis for an equitable indemnity claim. *RML Corp. v. Lincoln Window Prods.*, 67 Va. Cir. 545, 564 (2004) (noting, however, that all of the negligence claims brought by RML against the defendants had been thrown out on demurrer). Taking perhaps the most rigid stance on the issue, the United States District Court for the Western District of Virginia stated, "indemnification, unlike contribution, may not be claimed unless and *until* the plaintiff recovers from the indemnitee." *AMCO Water Metering Sys. v. Travelers Casualty Surety Co. of Am.*, No. 3:03CV00003, 2003 U.S. Dist. LEXIS 17758, at *11 (Sept. 30, 2003) (emphasis added).

In 2003, the Supreme Court of Virginia revisited *Carr* and the issue of equitable indemnification and declared it inapplicable in a case where "there ha[d] been no determination that any act or omission of [the indemnitor] caused the damage to the [original plaintiff's] house." *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 529.

The Virginia Supreme Court has made it clear that a mere allegation of negligence on the part of another party is not enough to establish a cause of action for indemnification. *See Carr v. Home Ins. Co.*, 250 Va. 427, 429 (1995). Presently, there has been no determination that any act or omission on the part of BFI caused the alleged damage to RSWA. *See Pulte Home Corp. v.*

*Parex, Inc.*, 265 Va. 518, 529 (2003). Although, such a determination is pending, it is not enough to save Container Rentals' equitable indemnification claim. The Court, therefore, will sustain BFI's demurrer to Count I.

## B. *Third-Party Beneficiary Breach of Contract*

In Count II of the Third-Party Complaint, Container Rentals asserts a claim for third-party beneficiary breach of contract against BFI. Under Virginia law, a person may seek to enforce a contract to which he is not a party where "the parties to [the] contract clearly and definitely intended to confer a benefit upon him." *Copenhaver v. Rogers*, 238 Va. 361, 367 (1989) (citing *Allen v. Lindstrom*, 237 Va. 489, 500 (1989)). Conversely, "a person who benefits only incidentally from a contract between others cannot sue thereon." *Id.* (citing *Valley Co. v. Rolland*, 218 Va. 257, 259-60 (1977)). A third-party, however, "need not be named in the contract" to be considered a third-party beneficiary. *Kelley v. Griffin*, 252 Va. 26, 29 (1996).

In support of Count II, Container Rentals alleges that, in executing the Agreement, the Authority and BFI clearly and definitely intended to confer upon it and all similarly situated haulers of Rivanna Area MSW the right to deposit such waste at the Transfer Station for the duration of the Agreement. Third-Party Complaint at ¶ 29. Container Rentals alleges that the Agreement required BFI to ask the Origin Question and to report all origin information acquired from third-parties to the Authority for billing purposes. Third-Party Complaint at ¶¶ 30-31. Container Rentals alleges that BFI breached the Agreement by failing to ask the Origin Question. Third-Party Complaint at ¶ 32. Container Rentals alleges, finally, that BFI's breach of the Agreement damaged Container Rentals to the extent that BFI improperly charged it for loads of Rivanna Area MSW deposited at the Transfer Station. Third-Party Complaint at ¶ 34.

The law in Virginia on third-party beneficiaries to a contract is based upon Virginia Code Section 55-22. This provision allows for "a third party to take an interest under an instrument, although not a party to it, if the promise is made for the third party's benefit and the evidence shows that the contracting parties clearly and definitely intended to confer a benefit upon such third party." *Ashmore v. Herbie Morewitz, Inc.*, 252 Va. 141, 149 (1996). Third-parties, however, that are intended to benefit under a contract but merely benefit incidentally through its performance, may not take such an interest, and may not bring suit under the contract. *Copenhaver v. Rogers*, 238 Va. 361, 367 (1989).

Although Container Rentals was not named in the Agreement, § 55-22 of the Virginia Code, clearly allows for two contracting parties to extend a benefit to an unnamed third party; Container Rentals' absence in the language of the Agreement, therefore, is not dispositive. Va. Code § 55-22; *Kelley v. Griffin*, 252 Va. 26, 29.

Likewise, the Virginia Supreme Court has recognized that the nonexistence of a party at the time of a contract can support an inference that a party was not "clearly and definitely" an intended third-party beneficiary. *Caudill v. County of Dinwiddie*, 259 Va. 785, 793 (2000) (concluding that "there is no provision, express or implied, of the [contract] that clearly and definitely shows an intent to confer a benefit upon the bondholders or Trustee as third-party beneficiaries of those contracts. Indeed, the Trustee and bondholders did not even exist when those contracts were executed.")

Most enlightening, however, are the express and implied terms of the Agreement. Virginia law is clear that the "four corners of a contract evidence whether contracting parties clearly and definitely intended to directly benefit a third party." *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037, 1039 (1987) (citing *Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 220 Va. 135 (1979)).

The Agreement states that BFI will provide a transfer station location for various sources of contracted-for municipal waste as well as "portions of the privately collected waste from Rivanna Service Area." Agreement, at page 1. This language clearly bestows a benefit upon Container Rentals, a private firm collecting waste from the Rivanna Service Area. Third-Party Complaint at ¶ 3.

By analyzing the terms of the Agreement and taking all of Container Rentals' facts pleaded as true, it becomes clear that Container Rentals has pleaded sufficient facts to state a claim for third-party beneficiary breach of contract. The Court, therefore, will overrule BFI's demurrer to Count II.

## C. *Money Had and Received*

In Count III of the Third-Party Complaint, Container Rentals asserts a claim for money had and received against BFI. In Virginia, "[a]n action for Money Had and Received will lie whenever one has money of another which he has no right to retain and which the defendant is obligated by natural justice and equity to refund." *Hartford Fire Ins. Co. v. First Union Nat'l Bank*, 45 Va. Cir. 279, 281 (Fairfax County 1998) (citing *Shores v. Shafer*, 206, Va. 775 (1966)). The cause of action for money had and received is an outgrowth of the common law cause of action of assumpsit, which lies "in

almost every case where money has been received which in equity and good conscience ought to be refunded." *Armour & Co. v. Whitney & Kemmerer, Inc.*, 164 Va. 12, 21 (1935).

The classic case giving rise to a claim of assumpsit, or money had and received, is one in which the plaintiff pays money to the defendant in excess of the amount contractually owed or pursuant to an act of fraud, duress, or compulsion by the defendant and the defendant refuses to refund the money to the plaintiff. *See, e.g., Gross v. Citizens Mut. Bldg. Ass'n*, 168 Va. 119 (1937) (an action for money had and received will lie where it is alleged that a bank improperly withheld money deposited by a customer); *Grace Sec. Corp. v. Roberts*, 158 Va. 792 (1932) (where individuals purporting to act on behalf a defendant corporation, but actually acting *ultra vires*, sold shares in the corporation to the plaintiff with the promise to repurchase them at a later date and breached that promise, the plaintiff may recover his payment from the defendant in an action for money had and received); *Economic Water Heating Corp. v. Dillon Supply Co.*, 156 Va. 597 (1931) (a buyer purchasing defective goods under warranty and exercising his right of return may recover the purchase price from the vendor by instituting an action for money had and received).

Courts in Virginia and elsewhere have long recognized that the cause of action in assumpsit is uniquely suited to redress improper billing and overcharges. *See, e.g., Blackwood Coal & Coke Co. v. Old Dominion Power Co.*, 151 Va. 52 (1928) (plaintiff filed action in assumpsit to recover amounts defendant overcharged for electric power service); *Mathieson Alkali Works, Inc. v. Norfolk and W. Ry.*, 147 Va. 426 (1927) (plaintiff filed action in assumpsit to recover amounts paid to the defendant carrier in excess of the guaranteed rate of freight); *Virginia Coal & Iron Co. v. Louisville & N. RR.*, 98 Va. 776 (1900) (same); *Stone v. White*, 301 U.S. 532 (1937) (claim of assumpsit is proper to recover taxes erroneously collected by the federal government).

In support of Count III, Container Rentals alleges that, as a result of BFI's failure to ask the Origin Question during the Relevant Period, BFI inappropriately charged Container Rentals BFI's tipping fees for loads of Rivanna Area waste deposited at the Transfer Station. Third-Party Complaint at ¶¶ 39, 41. Container Rentals alleges that the Authority, not BFI, should have billed Container Rentals for Rivanna Area waste at the Authority's rate, as provided in the Agreement. Third-Party Complaint at ¶ 40. Container Rentals alleges that it timely paid all of BFI's invoices and that it is entitled to a refund of all tipping fees for loads originating in the Rivanna Area. Third-Party Complaint at ¶¶ 41-42.

In Count III, Container Rentals states a claim of improper billing against BFI and demands a refund of all overcharges. If the Authority is entitled to charge Container Rentals its tipping fees for certain Rivanna Area loads and Container Rentals proves that it has alternatively paid BFI's standard tipping fees for the same loads, then Container Rentals may be entitled to the money that BFI did not have a right to retain under the transaction.

Container Rentals has pleaded sufficient facts to state a cause of action for money had and received, limited to the amount Container Rentals may have *overpaid* BFI. The Court, therefore, will overrule BFI's demurrer to Count III.

### Conclusion

For the foregoing reasons, the Court sustains BFI's demurrer to Counts I, with leave to amend within twenty-one days of the date hereof, and overrules BFI's demurrer to Counts II and III of the Third-Party Complaint. Objections of counsel are noted for the reasons stated in their arguments and various memoranda.