Present:  All the Justices

JELD-WEN, INC.

OPINION BY
v.  Record No. 972103                JUSTICE LAWRENCE L. KOONTZ,
JR.

June 5, 1998
ANTHONY KENT GAMBLE, BY HIS MOTHER
 AND NEXT FRIEND, LaDONNA GAMBLE

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
J. Howe Brown, Jr., Judge

This is an appeal of a judgment entered on a jury verdict for the plaintiff in a products liability action.  Upon well settled principles we will review the evidence in the light most favorable to the party prevailing in the trial court and recount only those facts relevant to our resolution of this appeal.

On April 25, 1993, Anthony Kent Gamble (Gamble), then thirteen months old, fell though an open second floor window in the living room of the townhome rented by his parents after the window's screen fell out of the window frame.  As a result of his fall, Gamble suffered severe, permanent injuries.

Thereafter, Gamble, by his mother and next friend, LaDonna Gamble, filed a motion for judgment against Jeld-Wen, Inc. (Jeld-Wen), the manufacturer of the window and screen; the building contractor that purchased these products from Jeld-Wen and used them in the construction of the townhome; and the parents' landlord.  The contractor and the landlord were subsequently nonsuited following settlement of the claims

against them, leaving Jeld-Wen as the sole defendant. The motion for judgment asserted alternative theories of Jeld-Wen's liability, alleging both negligence in the manufacture of the window frame and screen and breach of implied warranty of merchantability.

At trial, the evidence established that this tragic incident arose under the following relevant facts. The window was approximately six feet in height and its sill was eight inches above the surface of the living room floor. The window screen was an ordinary wire mesh screen[1] and covered the entire opening of the window. It was designed to be held in place by two fixed pins at the top and two spring-loaded pins at the lower left and right of the window frame. The left spring-loaded pin and the groove in the window frame into which the pin was intended to be inserted contained manufacturing defects that prevented the screen from being held securely in place unless light pressure was applied to the screen from the <u>outside</u> rather than from the inside of the window where the pin was located. While not clear from the evidence, we will assume that this pin and, thus, the screen appeared to be, but was not, secured on

---

[1]The parties do not dispute that the screen was neither designed nor constructed of special materials so as to permit it to function as a body restraint beyond the incidental contact that might result from the intended use and function of an ordinary window screen.

the day in question, resulting in a "false latch" as alleged by Gamble.

Gamble was approximately twenty-eight inches in height and weighed seventeen pounds, thirteen ounces. According to his father's testimony, Gamble was standing on the cushions of a loveseat that backed up to the window. Gamble's father had opened the blinds and raised the lower sash of the window to allow fresh air into the home and to permit Gamble to "wave good-bye" to his mother who was outside the home. When the sash began to slip down, Gamble's father left the loveseat in order to adjust it. At that point, Gamble reached out and "barely touched" the screen. The screen fell away from the window and Gamble fell through the open window, falling approximately ten feet to the concrete driveway below.

The jury awarded Gamble $15,000,000 in damages. The trial court confirmed the jury's verdict, reducing it by the amounts already received through settlement of the claims against the other defendants. We awarded Jeld-Wen this appeal.

We have not previously addressed the dispositive issue in this appeal which involves the determination, as a matter of law, of the duty of a manufacturer of an ordinary window screen that is neither designed nor manufactured to act as a body restraint to safeguard against the misuse of the screen for that purpose. Without a legal duty there can be no cause of action

3

for an injury.  See C&P Telephone Co. v. Dowdy, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988).  We have, however, established principles that guide our analysis of this novel issue.

"[A] manufacturer is not required to supply an accident-proof product."  Besser Company v. Hansen, 243 Va. 267, 276, 415 S.E.2d 138, 144 (1992).  Rather, "[t]he standard of safety of goods imposed on . . . the manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence.  The product must be fit for the ordinary purposes for which it is to be used."  Logan v. Montgomery Ward, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). In order to recover under either of these theories against the manufacturer of a product, "a plaintiff must show (1) that the [product was] unreasonably dangerous either for the use to which [it] would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the manufacturer's hands." Morgen Industries, Inc. v. Vaughan, 252 Va. 60, 65, 471 S.E.2d 489, 492 (1996).  While a manufacturer may not be held liable for every misuse of its product, it may be held liable for a foreseeable misuse of an unreasonably dangerous product. Featherall v. Firestone Tire & Rubber Company, 219 Va. 949, 964, 252 S.E.2d 358, 367 (1979); Sloan v. General Motors Corp., 249 Va. 520, 526, 457 S.E.2d 51, 54 (1995).

4

Applying these principles, we think it is clear that Jeld-Wen's duty to Gamble was to manufacture a window screen and frame "fit for the ordinary purposes for which it is to be used" and safe for a reasonably foreseeable misuse that could cause injury. Gamble concedes that the ordinary purposes of Jeld-Wen's window screen are to keep insects out while letting in light and fresh air and would not include this screen serving as a childproof restraint.[2] Gamble asserts, however, that because the evidence supports a finding that Jeld-Wen knew or should have known of the existence of the defect that permitted the screen to have a "false latch" appearance and that a child could make casual contact with this screen and cause the screen to fall out of the frame, Jeld-Wen should have foreseen that the child could lose his balance and fall through the open window.

The initial difficulty with Gamble's theory is that it fails to draw the necessary distinction between the foreseeability of the screen being dislodged by the child's

_____

[2]We recognize that we have previously stated that "[w]hile screens are installed to keep bugs out, they do afford some protection to little children; and . . . [may cause] a false sense of security." Crosswhite v. Shelby Operating Corp., 182 Va. 713, 718-19, 30 S.E.2d 673, 675 (1944), appeal following remand, 185 Va. 585, 37 S.E.2d 7 (1946)(affirmed by an equally divided Court). The issue in Crosswhite, however, was not manufacturer's products liability, but negligent maintenance of the window by an inn-keeper. The legal duties involved in Crosswhite are not the same as those at issue here.

touch and the foreseeability of the child's losing his balance and falling through the open window.  Inherent in this theory is the necessary assumption that the screen was being used to provide balance and restraining support for the child's body weight, and, thus, to prevent a fall through the open window. As previously noted, this screen was not intended for this purpose, and therefore this was a misuse of the screen. Accordingly, it is not the occurrence of the "gentle touch," but the misuse of the screen to provide balance and restraining support that is the focus of our inquiry, and we must determine whether this misuse was reasonably foreseeable such that Jeld-Wen had a duty to safeguard against it.

In addition, Gamble's theory rests on the contention that because the danger of falling through open windows with screens is widely known, the "false latch" defect in Jeld-Wen's screen distinguishes this case from cases involving such falls where non-defective window screens may in fact provide a modest level of restraint.  In short, Gamble is asserting that because the defect in Jeld-Wen's screen would allow it to fall away from the window more readily than a screen without a defect, it was reasonable that Jeld-Wen would have foreseen the danger of the misuse of the defective screen.  We disagree.

Common knowledge of a danger from the foreseeable misuse of a product does not alone give rise to a duty to safeguard

6

against the danger of that misuse.  To the contrary, the purpose of making the finding of a legal duty as a prerequisite to a finding of negligence, or breach of implied warranty, in products liability "is to avoid the extension of liability for every conceivably foreseeable accident, without regard to common sense or good policy."  Pineda v. Ennabe, 72 Cal. Rptr. 2d. 206, 209 (Cal. Ct. App. 1998).  In this respect, manufacturers of ordinary window screens are not charged with a duty to safeguard against the misuse of their products as body restraints as this misuse is not considered reasonably foreseeable despite, or perhaps even because of, the obvious nature of the danger the misuse presents.  See, e.g., Lamkin v. Towner, 563 N.E.2d 449, 458 (Ill. 1990); Drager v. Aluminum Industries Corporation, 495 N.W.2d 879, 884 (Minn. Ct. App. 1993).  The same rationale is extended in many cases to landlords and property owners.  See, e.g., Henstein v. Buschbach, 618 N.E.2d 1042, 1045 (Ill. App. Ct. 1993); Vazquez v. City of New York, 596 N.Y.S.2d 115, 116 (N.Y. App. Div. 1993); Soproni v. Polygon Apartment Partners, 941 P.2d 707, 709-710 (Wash. Ct. App. 1997).

It then does not logically follow that the alleged defect in Jeld-Wen's screen would impose a different or greater duty to manufacture the screen so that it would act as a childproof restraint if misused for that purpose.  Although the existence of a defect is a factor in determining whether a product is

7

unreasonably dangerous for the use to which it would ordinarily be put, Morgen Industries, 252 Va. at 65-66, 471 S.E.2d at 492, it is not the dispositive factor in determining the duty, if any, to be imposed on the manufacturer to reasonably foresee a particular misuse of its product.  See Turner v. Manning, Maxwell & Moore, Inc., 216 Va. 245, 251, 217 S.E.2d 863, 868 (1975).  Therefore, here it is irrelevant that, absent this defect, Jeld-Wen's screen might have provided some level of restraint, since, as we have already determined, the misuse of the screen for balance and restraining support, however modest, was not reasonably foreseeable.

For these reasons, we hold, as a matter of law, that no duty extended to Jeld-Wen to manufacture the screen in question so that it would act as a childproof restraint.  Accordingly, we will reverse the judgment of the circuit court and enter final judgment for Jeld-Wen.

Reversed and final judgment.