HOLLAND, Justice:
 

 Edith Brower (“Brower”), as guardian ad litem for Shayne Townsend (“Shayne”), appeals from a final order of judgment entered pursuant to Superior Court Civil Rule 54(b) in favor of the defendant-appellee, Metal Industries, Inc. (“Metal Industries”). The complaint was filed against several defendants on behalf of Shayne alleging negligence, breaeh of warranties, and strict product liability.
 
 [1]
 
 The litigation related to injuries sustained by Shayne when he fell out of a second story window.
 

 The Superior Court granted Metal Industries’ motion for summary judgment, in a bench ruling. It held that Metal Industries did not have a duty to manufacture a screen that would have prevented Shayne from falling out of the window. It also concluded that neither the vent-stop feature of the window nor the warning label on the screen gave rise to a duty that would otherwise not have existed. The Superior Court further held that, even assuming the existence of a manufacturing defect, there was no basis for sub
 
 *943
 
 mitting the issue of proximate cause to a trier of fact.
 

 In this appeal, Brower contends that the Superior Court erred in granting Metal Industries’ motion for summary judgment. First, according to Brower, the Superior Court “unduly limited” the legal duty that Brower argues was owed by Metal Industries. Second, Brower submits the Superior Court incorrectly held that the warning label and vent-stop features of the Metal Industries’ window did not create a duty. Finally, Brower contends the Superior Court incorrectly held that, even assuming there was a manufacturing defect, there was no basis for submitting the issue of proximate cause to a trier of fact.
 

 This Court has concluded that, as a matter of law, Metal Industries had no duty to prevent Shayne’s fall through the open window. In the absence of a legal duty, Brower’s other arguments on Shayne’s behalf are without the necessary predicate foundation. A legal duty must be established before consideration can be given either to breach of duty or proximate causation. Therefore, the judgment of the Superior Court must be affirmed.
 

 FACTS
 

 On September 9,1992, Shayne fell out of a second story window in the home of Bernadette Townsend (“Townsend”), his aunt. Shayne sustained numerous injuries. At the time, Shayne was eleven months old, 28 3/4 inches tall, and weighed twenty pounds. Shayne could crawl but had not yet started walking at the time of his fall. The window that Shayne fell from was located approximately 16 5/8 inches from the floor. The window is 64 inches high and 32 7/8 inches wide.
 

 Just prior to his fall, Shayne was upstairs in a bedroom with his twin brother Wayne, and four of his cousins, all children of Townsend: Robert (“Robert”), age 8-9; Amber (“Amber”), age 8; Chappelle (“Chappelle”), age 5; and Khare (“Khare”), age 1. Although Townsend was downstairs unpacking groceries when Shayne fell, she had made three trips up the stairs to check on the children within a span of ten minutes.
 

 Shortly before Shayne’s fall, Robert had opened the upstairs bedroom window to talk with a friend. Amber told Townsend that Robert was at the window. Townsend told Robert to move away from the window. Robert then went down the stairs and out of the house into the front yard.
 

 Amber was in the room at the time of Shayne’s fall. Amber testified that she did not know how Shayne fell. Robert was also unable to provide any information as to how Shayne fell. Chappelle and Khare were too young to be deposed. Townsend was at the bottom of the staircase, proceeding to check on the children again, when she heard a voice say “the baby fell.”
 

 When Shayne fell, the entire screen fell out of the window. Townsend had never experienced a problem with the screen prior to the date of the fall, had never removed the screen, nor put it up or down. From the time Townsend had moved in the home in June until Shayne’s fall in September, the screen had remained where it was in the window. The day after the accident, metal clips were installed on the outside of the screen.
 

 The screen was designed to fit inside the window frame, with two tension springs on the left side. When those springs were depressed, the right side of the window could be moved to or from the window channel. The window was designed with a vent-stop feature which, when activated by someone depressing inward and lifting upward, would prevent the window from being raised to its full height. Townsend was unaware of this feature.
 

 The screen had a warning label on the bottom edge of the screen. The warning states that screens are not intended to keep people or objects in. There is a dispute as to whether the entire warning was visible. It is undisputed, however, that the word “warning” was visible. Townsend acknowledged that she was aware of the danger of children falling out of windows. Robert and Amber knew that they were not supposed to open the window.
 

 
 *944
 
 The record reflects that a window screen consists of the frame, the spline, and the wire mesh. Metal Industries tests the screens it manufactures to see how much pressure it would take to push the spline and mesh out of the frame. The tests demonstrate that it takes forty pounds of force to separate the mesh and spline from the frame. The test is not done with the screen in the window. No test is performed to determine how much force is necessary to detach the entire screen from the window.
 

 Harry L. Miller (“Miller”), Screen Manager for Metal Industries, visited the Townsend home after Shayne’s fall to inspect the window and screen. He noted that the screen seemed loose in the window. The window frame appeared “bowed” in the center. When measured, the window was wider in the middle than at the top and bottom. There is no way to determine if the variation in the window’s width was the result of manufacture as opposed to installation. Miller acknowledged that it was “possible” that this condition could cause the screen to fall or blow out of the window.
 

 The Parties’ Contentions
 

 Brower argues that the Superior Court “unduly limited the scope” of Metal Industries’ duty as a manufacturer of windows with screens. Brower asserts that she is not advocating “a higher standard or a duty to design a child-proof screen.” According to Brower, Metal Industries had a duty to “manufacture a window and screen consistent with existing standards, suitable for ordinary, foreseeable use, free from manufacturing defects,” and thus “avoiding-foreseeable risks of harm, particularly to small children .” The crux of Brower’s argument is that had the window been manufactured properly,
 
 as designed,
 
 Shayne would not have fallen out the window. According to Brower, the window, as designed, would have withstood any pressure that the twenty pound infant could have created. Thus, Brower submits, if the screen had been properly manufactured to fit within the window for its intended purpose, then no matter what occurred to create the circumstances of Shayne’s fall, the amount of pressure would not have been enough to dislodge a nondefective screen from the window.
 

 Metal Industries argues the ordinary purpose of its window screens are to keep insects out while letting in light and air but not to serve as a restraint for either children or adults. Metal Industries submits that manufacturers of window screens “have never been found to have a duty to design and manufacture” a window screen that “will prevent people from falling from windows.” The Superior Court agreed and held that Metal Industries did not have a duty to manufacture a screen that would be a “security device to keep people in.”
 

 Manufacturer’s Legal Duty Proper Use For Intended Purpose
 

 There can be no cause of action in the absence of a legal duty. The threshold determination of whether the defendant owed a duty to the plaintiff, in an action for negligence or breach of warranty, is an issue of law for the court to determine.
 
 Craig v. A.A.R. Realty Corp.,
 
 Del.Super., 576 A.2d 688, 692 (1989),
 
 aff'd.,
 
 Del.Supr., 571 A.2d 786 (1989). The legal duty of a manufacturer has been summarized as follows:
 

 [a] manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as- involving an unreasonable risk of causing physical harm
 
 to 'those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use,
 
 is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.
 

 Restatement (Second) of Torts § 395 (1965) (emphasis supplied);
 
 Massey-Ferguson, Inc. v. Wells,
 
 Del.Supr., 383 A.2d 640, 642 n. 1 (1978).
 
 See also
 
 6
 
 Del.C.
 
 § 2-314.
 

 Brower asserts that for many years there has been a “distinct split of authority” regarding the issues of liability for defective window screens, but that a close analysis “discloses an emerging recognition of a limited duty to avoid foreseeable harm to children
 
 *945
 
 from defective windows and screens.” Brow-er’s analysis, however, does not distinguish between the duties owed by manufacturers, landlords, and innkeepers. The Virginia Supreme Court recently noted those legal duties are not the same.
 
 Jeld-Wen v. Gamble,
 
 501 S.E.2d 398, 396 n. 2 (1998).
 
 See also Drager v. Aluminum Industries Corp.,
 
 Minn.Ct.App., 495 N.W.2d 879, 885 (1993).
 
 Accord Pineda v. Ennabe,
 
 61 Cal.App.4th 1403, 72 Cal.Rptr.2d 206, 207-09 (1998).
 

 Persuasive Authority Jeld-Wen, Inc. v. Gamble
 

 In
 
 Jeld-Wen,
 
 the Virginia Supreme Court reviewed the final judgment entered after a jury verdict in favor of a thirteen month old infant, Anthony Gamble (“Gamble”).
 
 Jeld-Wen, Inc. v. Gamble,
 
 501 S.E.2d 393, 395 (Va.1998). The infant had fallen through an open second floor window after the window screen fell out of the window frame.
 
 Id.
 
 Gamble’s complaint asserted alternative theories of liability against the window screen manufacturer, alleging both negligence in the manufacture of the window frame and screen and breach of implied warranty of merchantability.
 
 Id.
 

 The facts in the case
 
 sub judice
 
 are almost identical to the facts in
 
 Jeldr-Wen.
 
 The facts, as established in
 
 Jeldr-Wen,
 
 showed that Gamble was 28 inches in height and weighed 17 lbs., 13 oz.
 
 Id,
 
 The window was on the second floor, approximately six feet in height with the sill eight inches above the surface of the living room floor.
 
 Id.
 
 Although unclear, the court assumed that there was a manufacturing defect which prevented the screen from being held securely in place which resulted in a “false latch.”
 
 Id.
 
 Gamble reached out to “wave good-bye” to his mother and “barely touched” the screen which fell away from the window followed by Gamble.
 
 Id.
 
 at 395-96.
 

 The Virginia Supreme Court held that Jeld-Wen’s duty to Gamble “was to manufacture a window screen and frame ‘fit for the ordinary purposes for which it is to be used’ and safe for a reasonably foreseeable misuse that could cause injury.”
 
 Id,
 
 at 396. Gamble argued that Jeld-Wen knew or should have known of the defect that created the “false latch” and that a child could make “casual contact” with the screen and fall through the window.
 
 Id.
 
 The Virginia Supreme Court noted that Gamble’s theory necessarily assumed that the screen was “being used to provide balance and restraining support for the child’s body weight, and, thus, to prevent a fall through the open window.”
 
 Id.
 

 The Virginia Supreme Court held that the screen was not intended to be used for the purpose of restraining or preventing falls by children and, therefore, this was a misuse of the screen.
 
 Id,
 
 The issue the court determined was whether “this misuse was reasonably foreseeable such that Jeld-Wen had a duty to safeguard against it.”
 
 Id.
 
 at 397. Gamble argued, as Brower argues here, that because the defect in the screen allowed it to fall away from the window “more readily” than a nondefective screen, it was reasonable that the manufacturer would have foreseen the misuse of the screen.
 
 Id.
 

 The Virginia Supreme Court disagreed stating that “[ejommon knowledge of a danger from the foreseeable misuse of a product does not alone give rise to a duty to safeguard against the danger of that misuse. To the contrary, the purpose of making the finding of a legal duty as a prerequisite to a finding of negligence, or a breach of implied warranty, in products liability ‘is to avoid the extension of liability for every conceivably foreseeable accident, without regard to common sense or good policy.’ ”
 
 Jeld-Wen, Inc. v. Gamble,
 
 501 S.E.2d at 397,
 
 quoting Pineda v. Ennabe,
 
 61 Cal.App.4th 1403, 72 Cal. Rptr.2d 206, 209 (1998). The Virginia Supreme Court held it was irrelevant that absent the defect the screen might have provided some protection, since the misuse of the screen as a child restraining support was not reasonably foreseeable, because of the “obvious danger the misuse presents.”
 
 Id.
 

 No Legal Duty In This Case Improper Use For Unintended Purpose
 

 We find the
 
 ratio decidendi
 
 in
 
 JeldrWen
 
 persuasive. Metal Industries manufactured the screen for the intended purpose of keeping insects out while letting in air and
 
 *946
 
 light. It had a duty to persons who could be harmed when the screen was properly used for those intended purposes. We hold that Metal Industries had no duty to persons who could be harmed by a screen improperly used for the unintended purpose of restraining infant children from falling out of an open window.
 

 We also hold that the Superior Court properly concluded the warning label and vent-stop feature in the Metal Industries’ window did not constitute the voluntary undertaking of a duty where none would have existed otherwise. The “standard for determining the duty of a manufacturer to warn is that which a reasonable (or reasonably prudent) person engaged in that activity would have done, taking into consideration the pertinent circumstances at that time.”
 
 Graham v. Pittsburgh Corning Corp.,
 
 Del.Super., 593 A.2d 567, 571 (1990). When a “ ‘dangerous condition is fully obvious and generally appreciated nothing of value is added by a warning.’ ”
 
 Maldonado v. Thomson National Press Co.,
 
 16 Mass.App.Ct. 911, 449 N.E.2d 1229, 1231 (1983)
 
 quoting
 
 2 Harper and James,
 
 Torts
 
 § 28.7, at 1547 (1956). Townsend, the adult who was watching Shayne, acknowledged her awareness of the danger that a child might fall through an open window.
 

 Finally, Brower argues that, assuming the window was defective, there was a material factual dispute in the record about whether that defect was a proximate cause of Shayne’s fall. It is well-established that summary judgment may be entered only when the moving party establishes the absence of a genuine issue of material fact.
 
 Ebersole v. Lowengrub,
 
 Del.Supr., 180 A.2d 467, 469 (1962). It is also true that issues of proximate cause are
 
 normally
 
 questions of fact for the jury.
 
 Id.
 
 Metal Industries’ factual argument fails because, as a matter of law, there was no duty owed by Metal Industries to manufacture a screen that would function as a child restraint to have prevented Shayne’s fall. Therefore, in the absence of a legal duty, the Superior Court properly concluded there was no issue of material fact to submit to a jury.
 

 Conclusion
 

 The judgment of the Superior Court is AFFIRMED.
 

 [1]
 

 . Suit was originally brought by Wayne Townsend, Sr. and Sharen Taylor, individually and as guardians for Shayne. Mr. Townsend and Ms. Taylor are Shayne’s parents. On April 3, 1995, the complaint was amended to add the manufacturer of the window, Metal Industries, as a defendant. Brower was substituted as Shayne's guardian
 
 ad litem
 
 on August 6, 1996.