# CIRCUIT COURT OF PULASKI COUNTY

Keith Allen Duncan
and Vanessa Duncan,
etc., et al.

v.

Hyundai Motor Co.
and Hyundai Motor America

November 1, 2013

Case No. CL 10-0503

BY JUDGE COLIN R. GIBB

This matter comes before the Court upon Defendants' Motion to Set Aside the Verdict as Contrary to the Law and Evidence, Motion for a New Trial, Motion for Remittitur, and Motion for Evidentiary Hearing. Defendants, Hyundai Motor Company and Hyundai Motor America, (collectively "Defendants"), asserted that the Plaintiffs' evidence failed to support the jury's verdict for $14,140,000 and, therefore, must be overturned with entry of final judgment for the Defendants or, in the alternative, a new trial. Plaintiffs, Keith Allen Duncan and Vanessa Duncan, individually and as guardians and conservators of Zachary Gage Duncan, incapacitated (collectively, "Plaintiffs"), oppose the motion and request that the Court uphold the jury verdict.

## Procedural History

On September 8, 2010, the Plaintiffs filed suit against the Defendants asserting claims of negligence, failure to warn, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of express warranties for injuries suffered by Zachary Gage Duncan after he collided with a tree while driving a 2008 Hyundai Tiburon. The Plaintiffs' claim turned on the fact that the vehicle's side airbag did not deploy in the crash. While the Plaintiffs initially presented several theories of liability, at trial they proceeded solely on the claim of breach

250

of the implied warranty of merchantability. The second trial was held in June of 2013. On June 28, 2013, a jury returned a verdict for Plaintiffs, awarding $14,000,000.00 in damages and $140,000.00 for medical expenses. The first trial concluded on September 8, 2012, with a hung jury.

On August 9, 2013, Defendants filed the pending motions, Motion to Set Aside the Verdict as Contrary to the Law and Evidence, Motion for a New Trial, and Motion for Remittitur. On August 23, 2013, Plaintiffs filed their Brief in Opposition. On August 27, 2013, Defendants filed the pending Motion for Evidentiary Hearing and Memorandum in Support, to which the Plaintiffs responded on August 28, 2013. The Court held a hearing on August 29, 2013, and denied the Motion for Evidentiary Hearing and reserved rulings on the remaining motions.

## Statement of Facts

Zachary Gage Duncan was driving a 2008 Hyundai Tiburon manufactured and distributed by the Defendants on Belspring Road, in Pulaski County, Virginia. Near the intersection of Belspring Road and Hickman Cemetery Road, the vehicle crossed the double-yellow line and passed another vehicle on a blind curve at high speed. Duncan lost control of his vehicle, drove off the side of the road, slid sideways, struck two snow banks and a large hay bale, and ultimately struck a tree on the driver's side. Duncan's vehicle was equipped with a side airbag system. The side airbag did not deploy. According to the Plaintiffs' evidence, the vehicle struck the tree at a speed at, or in excess of the 18 mph threshold required to trigger the side air bag. Duncan suffered a significant brain injury as a result of being struck on the left side of the head.

At trial, Plaintiffs' expert witness, Geoffrey Mahon, testified that, had the side airbag sensor been located on the B-pillar, the air bag would have deployed. Mahon relied in part upon review of a sensor location study performed by Hyundai in 1999. Plaintiffs' expert testimony indicated that, had the side air bag deployed in the crash, it would have protected Duncan's head.

Defendants based their defense on the fact that the 2008 Hyundai Tiburon had exceeded both the applicable Federal Motor Vehicle Safety Standards ("FMVSS") and the federal government's New Car Assessment Program ("NCAP"), and that side air bags were not required under prevailing government standards. The 2008 Tiburon also performed better than average in side impact testing performed by the National Highway Safety Administration ("NHTSA"). As of 2008, some vehicle manufacturers placed their side airbag sensors on the B-pillar while others placed the sensor in alternative locations. There were other vehicles manufactured that year which lacked a side airbag system.

The case was submitted to the jury after the Court instructed the jury on the standards for finding a breach of the implied warranty of merchantability. The jury returned a verdict in favor of the Plaintiffs.

## Analysis as to Plaintiffs' Expert Testimony

Plaintiffs relied on the expert testimony of Gregory Mahon to establish a defect in the design of the 2008 Hyundai Tiburon in terms of placement of the airbag sensor and the testimony of Mariusz Ziejewski and Ronald Kirk to establish what occurred in the course of the collision. "Expert testimony is admissible in civil cases to assist the trier of fact, if the testimony meets certain fundamental requirements, including the requirement that it be based on an adequate factual foundation." *Countryside Corp. v. Taylor*, 263 Va. 549, 553, 561 S.E.2d 680 (2002). "[Virginia] Code § 8.01-401.1 provides that an expert witness in a civil case may testify and render an opinion 'from facts, circumstances, or data made known to or perceived by such witness at or before the hearing or trial.'. . ." *Vasquez v. Mabini*, 269 Va. 155, 160, 606 S.E.2d 809 (2005).

At trial, the Defendants objected to each of the Plaintiffs' experts and the Court heard lengthy arguments on these issues. The Court admitted certain portions of the experts' testimony and excluded other portions. The witnesses provided testimony "based on facts, circumstances, and data made known to" them or "perceived by" them "at or before" trial. *Id.* Mahon based his testimony in part on internal testing data of Hyundai, as well as FMVSS. . . . Ziejewski testified on the basis of the actual vehicle itself, a vehicle dynamic analysis, information on the Hyundai Tiburon, including NHTSA ratings, and still images of a Hybrid III test device. The Court excluded testimony concerning what he referred to as blood on the vehicle. Trial Tr. at 1758-61. Kirk testified on the basis of, among other things, design information for automotive vehicles including the Hyundai Tiburon, information concerning the collision on the basis of photographs and in-person analysis on the scene, and crash test data.

## Analysis as to Evidence of Breach of Implied Warranty

In this case, the Court instructed the jury to find that Defendants breached the implied warranty of merchantability "if Plaintiffs prove by a preponderance of the evidence that the Tiburon was unreasonably dangerous for the use to which it would ordinarily be put or for some other reasonably foreseeable purpose . . . [a]nd that the unreasonably dangerous condition existed when the Tiburon left the Defendants' hands." Trial Tr. at 2734-35. Furthermore, the Court instructed the jury that an unreasonably dangerous condition refers to "a design defect that renders [the product] unreasonably dangerous." *Id.* at 2735.

Under this theory, a "product must be fit for the ordinary purposes for which it is used," which includes "a *foreseeable* misuse." *Jeld-Wen, Inc. v. Gamble*, 256 Va. 144, 148, 501 S.E.2d 393 (1998) (emphasis in the original). The standard, as established by the Supreme Court of Virginia Court, is that:

> whether the theory of liability is labeled warranty or negligence . . . a plaintiff must show (1) that the [product was] unreasonably dangerous either for the use to which [it] would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the manufacturer's hands.

*Id.* (quoting *Morgen Industries, Inc. v. Vaughan*, 252 Va. 60, 65, 471 S.E.2d 489 (1996)); see also *Garrett v. I. R. Witzer Co.*, 258 Va. 264, 267-68, 518 S.E.2d 635 (1999) (citing *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 428 (1975)) (same). In *Jeld-Wen*, the Court reversed the jury verdict in finding that the "misuse of the [product] . . . however modest, was not reasonably foreseeable." *Jeld-Wen*, 256 Va. at 150. In *Morgen Industries*, the Court noted that "[t]he issue of whether a product is unreasonably dangerous is a question of fact." *Morgen Industries*, 252 Va. 60, 66, 471 S.E.2d 489 (1996). The Court upheld the jury verdict in that expert testimony indicated that a defect resulted in "an unreasonably dangerous product" and the jury could credit one expert's testimony over conflicting evidence on a disputed issue. *Id.*

Defendants cite *Bayliner Marine Corp. v. Crow* for the proposition that, "[i]n order to prove that a product is not merchantable, the complaining party must first establish the standard of merchantability in the trade." 257 Va. 121, 128, 509 S.E.2d 499 (1999) (citing *Laird v. Scribner Coop, Inc.*, 237 Neb. 532, 539, 466 N.W.2d 798, 804 (1991)). In *Laird*, the Defendant cited a case in which "plaintiff's only evidence was the testimony of a lay witness" for a defect that was not "obvious to a layman," in which case "other evidence, usually expert testimony, is necessary to prove proper or acceptable standards of performance." *Laird*, 237 Neb. at 539, 466 N.W.2d at 804 (citing *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 198 Neb. 392, 396, 253 N.W.2d 37, 39-40 (1977)) (quotation marks omitted). The *Bayliner* Court also noted that "[g]enerally, the issue whether goods are fit for the ordinary purposes for which they are used is a factual question." The Court found there was no breach of an implied warranty due to the fact that "the evidence fails to establish that the [product] was not fit for the ordinary purpose for which it was intended." *Bayliner*, 257 Va. at 129.

In this case, the Court was presented with a foreseeable misuse of an automotive vehicle, a loss of control during driving that led to a collision. See *Ward v. Honda Motor Co.*, 33 Va. Cir. 400, 404 (citing *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066, 1069 (4th Cir. 1974);

*Euler v. American Isuzu Motors, Inc.*, 807 F. Supp. 1232, 1236 (W.D. Va. 1992)) (noting that "federal courts that have considered the issue have each predicted that Virginia would recognize a cause of action based on crashworthiness" in part due to the fact that collisions are "reasonably foreseeable"). Both parties presented expert testimony that went to the standard of merchantability.

Defendants presented evidence of the 2008 Hyundai Tiburon's performance with respect to government standards, including the FMVSS and NCAP program, as well as NHTSA crash testing. Plaintiffs adduced evidence that other vehicles Hyundai had manufactured for that year placed the sensor in the B-pillar, Trial Tr. at 1174-75 (testimony of Gregory Mahon, P.E.), and that Hyundai's internal testing indicated that the B-pillar sensor placement was superior to the floor location that Hyundai chose for the 2008 Tiburon. *Id.* at 1172-73. Mahon further testified that, "[i]f I were designing for this crash, the sill would be a better location than the B-pillar. But I am not designing for this crash. I am designing for all foreseeable crashes." *Id.* at 1174. With respect to meeting government standards, Mahon indicated that FMVSS establishes "a minimum safety standard as set by the government." *Id.* at 1076. Cars must meet the standards simply to be sold, and this does not mean the car has been properly designed. *Id.* at 1076-77.

In terms of breach, Plaintiffs produced evidence on the basis of expert testimony that, had the air bag sensor been placed in the B-pillar, the air bag would have deployed in the crash. Furthermore, evidence established by expert testimony indicated that the deployment of the airbag would have shielded the left side of Duncan's head. *Id.* at 1727-29, 1825 (testimony of Mariusz Ziejewski).

Reference to government safety standards is illustrative and potentially persuasive authority for determining whether a defect is unreasonably dangerous, but not dispositive. The Court in *Alevromagiros v. Hechinger Co.*, which the Defendants cited in support of their motions, noted that "[i]n determining what constitutes an unreasonably dangerous defect, a Court will consider safety standards promulgated by the government or the relevant industry, as well as *the reasonable expectations of consumers*" that "may differ from government or industry standards" and may be established by other evidence. 993 F.2d 417, 420-21 (emphasis added). Furthermore, " '[a]bsent an established norm in the industry,' a Court is constrained to rely on the opinion testimony of experts to ascertain the applicable safety standard." *Id.* at 421 (citing *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 430, 297 S.E.2d 675 (1982)). Here, Defendants have relied on governmental standards rather than a clear "norm of the industry." *Id.* In fact, Defendants, acknowledged with respect to their post-trial motions that "there is no specific industry standard regarding the placement of side impact airbag sensors." Defendants' Mem. in Support of Post-Trial Motions at 25. With

respect to expert opinion testimony, Plaintiffs introduced Mahon to establish that the product was unreasonably dangerous as designed. Plaintiffs also presented a number of exhibits with respect to airbag design and testing as well as Hyundai internal testing, which formed a basis for the opinions of Mahon and other experts Plaintiffs introduced.

## Conclusion

A Court "may set aside a jury's verdict only if the verdict is plainly wrong or without credible evidence to support it." *Burroughs v. Keffer*, 272 Va. 162, 166, 630 S.E.2d 297 (2006); see also *Sampson v. Sampson*, 221 Va. 896, 901, 275 S.E.2d 597 (1981) (noting that under § 8.01-430 of the Virginia Code, "a verdict may be set aside only where it is contrary to the evidence or without evidence to support it."). With respect to the several issues raised by this case, it is important to note as the Supreme Court has established that the:

> Trial Court judges must accord the jury verdict the utmost deference. If there is a conflict in the testimony on a material point, or if reasonable people could differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given to the testimony, the *Trial Court may not substitute its conclusion for that of the jury merely because the judge disagrees with the result.*

*Id.* at 166-67 (quoting *Bussey v. E.S.C. Restaurants, Inc.*, 270 Va. 531, 534, 620 S.E.2d 764 (2005)) (emphasis added) (quotations omitted).

The Court has struggled with the concept that one can take a product that is merchantable and make it non-merchantable simply by adding a safety feature, a feature that, in this case, did not cause the injury but failed to prevent the injury. It would seem illogical if one went onto a car lot purchased two identical vehicles, except one had side impact air bags and one did not that the one without the added safety feature is merchantable in the trade and the one with the feature is not.

However, the Trial Court should not substitute its conclusion for those of the jury merely because the court disagrees with the result. The evidence presented was extensive, the jury had the opportunity to credit or discredit the evidence each side presented, and the Court declines to find there is a lack of credible evidence to support the jury verdict. Therefore, the Defendants' motions are denied.