# FOR PUBLICATION



**FILED**
May 30 2014, 10:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**PETER J RUSTHOVEN**
**TERRI L. BRUKSCH**
**MICHAEL R. CONNER**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ERIC C. LEWIS**
Lewis Legal Services, P.C.
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS INC. and, JOHNSON & JOHNSON | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CT-332 |
| | ) | |
| TRAVIS BROWN, et al. | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
Cause No. 49D11-1202-CT-8271

**May 30, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

In this interlocutory appeal, DePuy Orthopaedics and Johnson & Johnson (collectively "DePuy") appeal the denial of its motion to dismiss on the grounds of *forum non conveniens*, governed by Indiana Trial Rule 4.4(C).

We reverse and remand.

ISSUE

Whether the trial court erred when it denied DePuy's motion to dismiss.

FACTS

DePuy Orthopaedics, a subsidiary of DePuy Synthes and Johnson & Johnson, provides prosthetic products for hip, knee, and shoulder replacement surgeries. DePuy sells its prosthetic products to hospitals through independent sales contractors. DePuy's principal place of business is located in Warsaw, Indiana, which is located in Kosciusko County. There, DePuy maintains offices, a manufacturing facility, and a warehouse.

The product at issue in this case, the ASR™ XL Acetabular System ("ASR™ XL System"), is a prosthetic hip implant sold in the United States between 2005 and 2010. DePuy International Limited ("DePuy International"), located in Leeds, England, designed and manufactured the ASR™ XL System. Thereafter, DePuy International shipped the ASR™ XL System to DePuy facilities in Warsaw.

Between October 2007 and April 2009, nineteen people residing in Virginia and Mississippi (collectively "the Plaintiffs") had the ASR™ XL System implanted during hip replacement surgeries; eighteen of the surgeries were performed in Virginia while the remaining surgery took place in Mississippi. On August 24, 2010, DePuy Orthopaedics

2

issued a voluntary global recall of the ASR™ XL System. The Plaintiffs' doctors notified them of the recall and advised them of the potential need for additional surgery.

On February 29, 2012, the Plaintiffs filed a complaint in Indianapolis, Indiana in the Marion County Superior Court for personal injuries alleging negligence, breach of express and implied warranties, and fraudulent concealment. DePuy filed a motion to dismiss based on Trial Rule 4.4(C). Pursuant to Trial Rule 4.4(D), it also stipulated that DePuy would submit to the personal jurisdiction of Virginia and Mississippi courts and waive any statute of limitation defenses available in those states.

On January 11, 2013, the trial court heard oral arguments on DePuy's motion. DePuy argued that trial in Marion County would not be convenient because the acts alleged by the Plaintiffs in their complaint took place outside Indiana. Further, DePuy claimed that witnesses and evidence essential to their defense were located beyond the subpoena power of the Indiana trial court. Many of the Plaintiffs' arguments in response focused on the fact that Indiana has personal jurisdiction over DePuy and that filing suit in Marion County was permissible. As to Trial Rule 4.4(C) matters, the Plaintiffs claimed that video depositions could cure any prejudice DePuy would suffer from not having subpoena power over certain witnesses. Finally, the Plaintiffs desired an earlier trial date than could be expected if they proceeded through pending federal multi-district litigation proceedings regarding the ASR™ XL System.[1]

---

[1] At the federal level, Judge Katz of the United States District Court for the Northern District of Ohio has presided over multi-district litigation (MDL) proceedings involving the ASR™ XL System for nearly three years (Master Docket Number 1:10-md-2197). Cases within a federal court's subject matter jurisdiction may be filed directly in the federal MDL action. Upon completion of all pretrial proceedings, those cases will be transferred to a proper venue for trial.

On January 22, 2013, the trial court issued an order summarily denying DePuy's motion to dismiss. DePuy filed a motion to certify the trial court's order for interlocutory appeal. The trial court granted DePuy's motion and certified its order. Thereafter, we accepted jurisdiction.

DECISION

Conflict of laws is a body of law governing how disputes which involve the laws of more than one country or state are resolved. Symeon C. Symeonides, *Conflict of Laws*, *in* KERMIT L. HALL & DAVID S. CLARK, THE OXFORD COMPANION TO AMERICAN LAW 138 (Oxford Univ. Press., 2002). A conflict exists because some or all of the elements associated with a plaintiff's claim are connected with more than one jurisdiction. *Id.* In other words, the facts of a particular case may allow a plaintiff to file suit in one or more states, even a foreign country.

Generally, a plaintiff is free to select the appropriate court or forum to resolve his or her claim. However, there are limitations. One of these limitations is the common law, equitable doctrine known as *forum non conveniens*. This doctrine grants trial courts the discretionary power to dismiss a case "whenever it appears that the cause before it may be more appropriately tried elsewhere." Paxton Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 COL. L. REV 1 (1929); *See also Broderick v. Rosner*, 294 U.S. 629, 643 (1935). The early application of this doctrine seems to have been aimed at limiting forum shopping, which is the plaintiff's ability to select a court or jurisdiction that he or she feels would render the most favorable verdict. Blair, *supra* at 24. (Blair argues that forum shopping frustrates the legislative process of apportioning

4

the necessary number of judges and courts for a particular population, leads to congested court calendars, and burdens local taxpayers with the expense of trying imported controversies.). However, principles of fairness enshrined in various Federal and Indiana constitutional provisions, including the dormant commerce clause and the doctrine of comity, require that citizens, whether or not they are residents of a particular state, be given access to the courts.[2] 1 William F. Harvey, INDIANA PRACTICE: RULES OF PROCEDURE ANNOTATED § 4.4 at 308 (3d ed. 1999 & Supp. 2013).

Given the natural tension between the doctrine of *forum non conveniens* and the preference for open access to Indiana's courts, courts have struggled to discern the criteria for dismissing a case under the doctrine of *forum non conveniens*; it has been the

---

[2] Article IV, § 2 of our Federal Constitution (The Privileges and Immunities Clause) provides, "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states."

Article IV, § 1 of our Federal Constitution (The Full Faith and Credit Clause) mandates that "[f]ull faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

Section 1 of the Fourteenth Amendment of our Federal Constitution provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, § 12 of our Indiana Constitution guarantees, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law…."

Comity is a principle wherein the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. BLACK'S LAW DICTIONARY 267 (6th ed. 1999).

The Dormant Commerce Clause is the principle that state and local laws are unconstitutional if they place an undue burden on interstate commerce. ERWIN CHEMERINSKY, CONSTITUTIONAL LAW 401 (2002).

Each of the provisions mentioned above has, at one time or another, been interpreted as placing a limitation upon a state's ability to prevent nonresident plaintiffs from bringing claims into state courts when that claim could be heard within the courts of another state.

subject of "considerable discussion and variance of view." *Id.* at 311-12. However, it is generally agreed that the doctrine should be applied sparingly and that its objective should be to "promote the ends of convenience and justice." *Id.*

In its effort to find this balance, Indiana has adopted Trial Rule 4.4(C), which, at the time, was taken from the Wisconsin Civil Code.[3] *Id.* This Court has stated that the purpose of the rule "is to permit a case to be litigated in another state upon a showing that litigation in Indiana is so inconvenient that *substantial injustice* is likely to result." *Employers Ins. Of Wausau v. RFC*, 716 N.E.2d 1015, 1021 (Ind. Ct. App. 1999) (emphasis added).[4] "A mere inconvenience to a corporate defendant's employees does not create the type of injustice necessary to warrant a dismissal on *forum non conveniens* grounds." *JPMorgan Chase Bank, N.A. v. Desert Place, Inc.*, 882 N.E.2d 743, 753 (Ind. Ct. App. 2008) *trans. denied.* However, "[t]he convenience of non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of forum." *Id.*

In exercising its discretion to decide whether to dismiss a case on *forum non conveniens* grounds, a trial court may appropriately consider such factors as:

> (1)  Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;
>
> (2)  Convenience to the parties and witnesses of the trial in this state and in any alternative forum;

---

[3] WIS. STAT. § 262.19(3).

[4] Our Indiana Supreme Court noted in *Anyango v. Rolls-Royce Corp.*, 971 N.E.2d 654, 656, n. 2 (Ind. 2012) that the substantial injustice language "would conflict with the explicit discretionary authority granted to the trial court in Trial Rule 4.4(C) if a motion to dismiss could not be granted unless it was clear that litigation in Indiana would be so inconvenient that 'substantial injustice' would likely to result."

(3)    Differences in the conflict of law rules applicable in this state and in the alternative forum; or

(4)    Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

T.R. 4.4(C).

We review a trial court's order regarding *forum non conveniens* motions for an abuse of discretion. *Anyango*, 971 N.E.2d at 656. An abuse of discretion occurs when "the trial court arrives at a conclusion that is clearly against logic and the natural inference to be drawn therefrom." *Freemond v. Somma*, 611 N.E.2d 684, 690 (Ind. Ct. App. 1993), *trans. denied*.

In deciding this case, we find the facts and reasoning outlined by the United States Supreme Court case of *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981), whose reasoning the Indiana Supreme Court adopted in *Anyango*, to be persuasive. There, several Scottish subjects and residents died in an airplane crash in Scotland. *Piper*, 454 U.S. at 238-39. Preliminary reports concluded that a mechanical failure in the plane or propeller caused the crash. *Id*. However, further review found no evidence of defective equipment and indicated that pilot error was to blame. *Id*. An administrator for the decedents' estates filed a wrongful death suit in California against Piper Aircraft Company, who manufactured the plane, and Hartzell Propeller, the manufacturer of the propellers. *Id*. at 239-40. Decedents' survivors filed a separate action in the United Kingdom. *Id*. The plane was manufactured in Pennsylvania, and the propellers were manufactured in Ohio. *Id*. at 238-39.

7

The administrator admitted that she filed the lawsuit in California because of its laws regarding liability, capacity to sue, and because potential damages were more favorable in California than in Scotland. *Id.* at 240. Defendants first moved to transfer the case to federal court. After the case was moved to the United States District Court, a subsequent motion to transfer to the Middle District of Pennsylvania was granted. *Id.* Once there, both Piper and Hartzell moved for dismissal on the ground of *forum non conveniens. Id.* at 241. The district court granted the motion, finding that Scotland was a more convenient forum based on the Supreme Court's balancing test stated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *Piper*, 454 U.S. at 241-44. The Third Circuit Court of Appeals reversed, holding that dismissal is automatically barred where the law of the alternative forum is less favorable to the plaintiff than the law of the forum chosen by the plaintiff. *Id.* at 244.

The United States Supreme Court reversed, concluding that dismissal could not be denied "merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." *Id*. at 247. The Court further stated, while emphasizing the need to retain flexibility in considering *forum non conveniens* motions, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id*. Finally, the Court reiterated the relevant public and private interest factors stated in *Gilbert. Id* at 241, n. 6. The private factors mentioned were the "relative ease of access to sources of proof; availability of compulsory process for

attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors to be considered include administrative difficulties for already congested courts and burdening jurors with litigation to which they have no relation or connection. *Id.* "[W]here the trial court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id*. at 257. In light of the factors stated in Trial Rule 4.4(C) and the reasoning in *Piper*, we hold that the trial court abused its discretion in denying DePuy's motion to dismiss.

## I. Personal Jurisdiction

Regarding Trial Rule 4.4(C)(1), an initial important consideration is DePuy's willingness to concede personal jurisdiction to Virginia or Mississippi courts. In this case, the plaintiffs are already residents of those respective states. Further, DePuy submitted a stipulation under Trial Rule 4.4(D) stating that it would submit to the personal jurisdiction of the plaintiffs' home states and would waive any defense based on the applicable statutes of limitation. The Plaintiffs argue extensively as to why Indiana has personal jurisdiction over DePuy. However, the trial court's personal jurisdiction over a defendant has no bearing in satisfying the first prong of Trial Rule 4.4(C). "Indeed, the doctrine of [*forum non conveniens*] can never apply if there is absence of jurisdiction or mistake of venue." *Gilbert*, 330 U.S. at 540. As a result, this first consideration weighs in favor of dismissal.

9

## II. Convenience

The next important consideration under Trial Rule 4.4(C)(2) is the "[c]onvenience to the parties and witnesses of the trial in this state and in any alternative forum; . . . ." In this case, we note again that each of the Plaintiffs live in Virginia or Mississippi. Concerning the inconvenience to DePuy, we note that it is a corporation conducting business nationally and that it is no stranger to multiparty litigation. As a result, it is likely that this case will involve some inconvenience no matter what the jurisdiction. In addition, "[a]ny inconvenience is mitigated by air travel, overnight delivery, electronic data transmission and videotaped depositions which are a part of the normal course of business for such companies." *Employers Ins. of Wausau*, 716 N.E.2d at 1022-23. However, the facts of this case show that many of the key witnesses, such as physicians, other medical personnel, and persons associated with the plaintiffs, are located in Virginia or Mississippi. While there will likely be DePuy employees located in Indiana who will be called as witnesses, it seems clear that the majority of the witnesses will be nonresidents. Given the facts of this case, the inconvenience and cost DePuy would incur securing the attendance of out of state witnesses (especially if they are uncooperative), deposing them, and conducting additional discovery is not insignificant. As a result, this factor also supports dismissal.

## III. Choice of Law

Another important consideration under Trial Rule 4.4(C)(3) is the difference in conflict of law rules applicable to Indiana, Virginia, and Mississippi. In this case, both parties agree that the laws of Virginia and Mississippi will apply to much, if not all, of

10

the tort claims in this case. The plaintiffs argue "that it is completely reasonable to presume that Indiana courts would be able to quickly and efficiently discover how Virginia and Mississippi address particular points of law that may differ from Indiana." (Plaintiffs' Br. 15). However, *Piper*, citing *Gilbert*, recognized that "[t]here is a local interest in having localized controversies decided at home." *Piper*, 454 U.S. at 241, n. 6. "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.*

Further, applying Indiana's choice of law analysis, we conclude that Virginia and Mississippi laws would apply to the tort claims in this case. The first part of Indiana's choice of law analysis is determining "'whether the differences between the laws of the states are 'important enough to affect the outcome of the litigation.'" *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (quoting *Hubbard Manufacturing Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). If there is a conflict, "'the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply. Under this rule, the court applies the substantive laws of 'the state where the last event to make an actor liable for the alleged wrong takes place.'" *Id.* However, this presumption is not conclusive. "'It may be overcome if the court is persuaded that 'the place of the tort 'bears little connection' to this legal action.'" *Id.*

Because the parties in this case agree that the location of the alleged wrong is significant, we will focus our analysis on whether the differences in the laws among Indiana, Virginia, and Mississippi would affect the outcome of this case. In their

11

complaint, the plaintiffs have alleged that they are entitled to compensatory and punitive damages resulting from the hip replacement installation of DePuy's ASR™ XL System. As the alleged manufacturer, the plaintiff's product liability claims also seek to subject DePuy to a strict liability standard. In its answer, DePuy raises a number of affirmative defenses, including the assertion that the ASR™ XL System conformed to the state of the art at the time.

Under Indiana's Product Liability Act ("The Act"), "the plaintiff must show that (1) the product is defective and unreasonably dangerous, (2) the defective condition existed at the time the product left the defendant's control, and (3) the defective condition is the proximate cause of the plaintiff's injuries." *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 160 (Ind. Ct. App. 1997); IND. CODE § 34-20-2-1. A product liability action may be based on the doctrine of strict liability, but it may not be brought against a seller of defective product unless that seller is also the manufacturer. IND. CODE § 34-20-2-3. "If a court is unable to hold jurisdiction over a particular manufacturer of a product . . . then that manufacturer's principle distributor or seller over whom a court may hold jurisdiction shall be considered . . . the manufacturer of the product. IND. CODE § 34-20-2-4.

In Virginia, products liability actions are not codified, but are rooted in common law. It does not matter whether the theory of liability against a manufacturer is labeled warranty or negligence, the standard of safety of goods is the same; the product must be fit for the ordinary purposes for which it is to be used. *Jeld-Wen, Inc. v. Gamble by Gamble*, 501 S.E.2d 393, 396 (Va. 1998). "In order to recover under either of these

12

theories against the manufacturer of a product, 'a plaintiff must show (1) that the [product was] unreasonably dangerous either for the use to which [it] would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the manufacturer's hands.'" *Id.* (quoting *Morgen Industries, Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996)). Virginia does not recognize strict liability as a ground for recovery in products liability cases. *Harris v. T.I., Inc.*, 413 S.E.2d 605, 609-10 (Va. 1992).

Under the Mississippi Products Liability Act, the plaintiff "has the burden of showing that the defect that allegedly was the proximate cause of the injury existed at the time that the product left the hands of the manufacturer, and that the defect rendered the product unreasonably dangerous. Accordingly, the proof must support that no material change in that product occurred after leaving the manufacturer's control." *Wolf v. Stanley Works*, 757 So.2d 316, 319 (Miss. Ct. App. 2000); MISS. CODE ANN. § 11-1-63 (2013). Following Restatement of Torts (Second) § 402A, strict liability is a ground for recovery against both manufacturers and sellers in Mississippi. *Scordino v. Hopeman Brothers, Inc.*, 662 So.2d 640,643 (Miss. 1995).

Indiana's conflict of law analysis shows a clear conflict between the jurisdictions concerning whether strict liability is available as a ground for recovery. Indiana recognizes strict liability, but only against manufacturers. Virginia does not recognize strict liability in product liability cases. Finally, Mississippi allows strict liability against both manufacturers and sellers. The availability, or lack thereof, of strict liability is significant enough to affect the outcome of this case. As a result, conflict of law analysis

13

and T.R. 4.4(C)(3) would require this case to be heard where DePuy's ASR™ XL System was implanted, which was Virginia or Mississippi.

IV.    Additional Factors

Finally, with regards to Trial Rule 4.4(C)(4), the record reveals other factors supporting our decision that the trial court abused its discretion. First, we see no evidence in the record that Virginia or Mississippi are inadequate forums. In fact, during oral argument, the plaintiffs' desire for trial in Indiana focused on securing an earlier trial date rather than any deprivation of their rights if trial took place elsewhere. There has been no showing by the plaintiffs that trial in their home forum will deprive them of any remedy or subject them to unfair treatment. *See, e.g.*, *Anyango*, 971 N.E.2d at 662 (forum found to be adequate for the purposes of T.R. 4.4(C) "so long as the parties will not be deprived of all remedies or treated unfairly.").

Second, as previously mentioned, federal courts are already managing pretrial activities related to the ASR™ XL System. Once pretrial proceedings are complete in the MDL, the district court will transfer cases to a proper venue for trial. Thus, Plaintiffs' claim that dismissal from Indiana to another forum "would reward DePuy for the harm it caused to out-of-state plaintiffs, effectively depriving plaintiffs of any opportunity to litigate their case in a state court," is not persuasive. (Plaintiffs' Br. 16).

For the aforementioned reasons, we find that the trial court abused its discretion in denying DePuy's motion to dismiss on *forum non conveniens* grounds. We reverse and remand to the trial court for issuance of the appropriate order dismissing this case for refiling in Virginia or Mississippi.

14

Reversed and remanded.

MATHIAS, J., and BRADFORD, J., concur.